G. E. Fuller and Era Fuller, Petitioners, *v*. Commissioner of Internal Revenue, Respondent.

Docket No. 38167.   Promulgated May 13, 1953.

*John E. Marshall, Esq.*, for the petitioners.
*W. B. Riley, Esq.*, and *John P. Higgins, Esq.*, for the respondent.

## OPINION.

Johnson, *Judge:* Petitioner reported gross profit of $46,865.36 in 1949 on gross sales of $393,469.72, by wholesale and retail, of intoxicating beverages in a business he admits was illegal under the laws of Oklahoma. He computed the gross profit by the inventory method. After an examination of petitioner's income tax liability for 1948, 1949, and 1950 by a special agent and revenue agent during about 30 working days, respondent increased the gross profit in 1949 by $40,006.73, or to $86,872.09, after allowing $6,839.29 for hauling, an increase in gross profit of about 85 per cent. The determination was made on the basis of sales of 7,182 cases in petitioner's wholesale and retail departments, at a mark-up in most instances of certain

amounts over invoice cost. He obviously resorted to that method of arriving at gross profit because of lack of reliance on the books maintained by petitioner.

Petitioner returned the gross profit entered in his books, which he insists were accurately kept. The number of cases of whiskey sold during the first 9 months was determined from Treasury Department forms kept by petitioner for purchases and sales, including transfers of whiskey from the wholesale to the retail department of his business, and vice versa. The forms were not maintained after October 12, when a bone-dry law was in effect in Oklahoma. The basis for the mark-up selling prices used by the respondent was an affidavit signed by petitioner.

Petitioner contends that the respondent's determination was arbitrary. To establish arbitrariness he relies upon the affidavit and alleged taxation in 1949 of sales made in 1948.

The affidavit was admitted in evidence without objection. Petitioner on cross examination was asked by respondent's counsel to read from the affidavit, whereupon petitioner's counsel suggested that the affidavit be put in evidence, rather than have the witness read therefrom, and respondent's counsel then offered it in evidence.

Petitioner testified that he signed the affidavit after reading it, and admitted that some statements therein differed from the testimony which he had given at the hearing; that he made it voluntarily and not under coercion. In answer to his counsel he said that he got tired of answering questions, and to keep from being further bothered he signed same.

At no time was a motion made to exclude the affidavit, and its validity was first attacked by petitioners in their brief, on the ground that it "flowered from an investigation demand not authorized by law." Then follows a discussion designed to show that the examination of petitioner by the revenue agent prior to the preparation and execution of the affidavit was not made in accordance with the regulations of the Bureau of Internal Revenue promulgated under the Administrative Procedure Act. If objection had been made to the admission of the affidavit on that ground, it would have been incumbent upon us to consider the argument and examine the authorities cited in petitioners' brief on this question, but since the affidavit was admitted in evidence without objection, all objections to its admissibility were waived and it "is entitled to its full and natural probative effect."[1] We therefore deem it unnecessary for us to review this question further.

---

[1] [§ 190] b. Failure to Object—(1) Statement of Rule. It is very generally held that a failure to object to evidence at the time it is offered is a waiver of all objections to its admissibility. The waiver is operative not only as affecting subsequent proceedings on the trial, but also as affecting the right to have questions of its admissibility reviewed on appeal or writ of error. * * * [64 C. J. 168].

[§ 239] * * * incompetent evidence, when "admitted without objection, has the

There is no merit to the contention of petitioner that respondent taxed him in 1949 on sales made in 1948. The testimony establishes that the original report of the revenue agent for the year 1949 showed the sales before October and thereafter as transactions taxable for that year. In preparing the statement attached to the deficiency notice the year 1948 was erroneously inserted for the year 1949. It was obviously a typographical error, as we have found. In fact, petitioner now agrees with our finding that he sold 7,087%24 cases of whiskey in 1949.

Evidence produced at the hearing established that the total gross profit on sales at wholesale of about 1,640 cases to four customers was about $1,000 in excess of the amount determined by the respondent. The gross profit, computed on actual cost and selling price, tends to support the accuracy of the mark-up price set forth in petitioner's affidavit. For instance, petitioner's affidavit shows a mark-up of $15 a case on sales to Booker and Davis. Actual profit was about $14.75 a case without taking into account a discount allowance of $3 a case to the buyer. In the case of Raymond and James, $8 was given as the mark-up and the actual profit was about $9.50 a case. Of the total sales prior to October 12, about 65 per cent was at retail. Petitioner informed the special agent that his mark-up on sales at retail was from $15 to $17 a case. The mean figure was shown in the affidavit.

The evidence before us fully sustains the method employed by respondent in determining petitioner's gross profits from sales of whiskey and the amount thereof to the extent of $91,927.70, less the allowance of $6,839.29, which is not in controversy.

As to fraud penalties for 1949 imposed under section 293 (b), Internal Revenue Code, in respondent's deficiency notice, after a careful review and consideration of all the evidence, the argument of counsel, and the authorities cited by the parties, we find that respondent has not sustained his burden of proof on the issue of fraud, and accordingly we hold for petitioners on this issue.

As to penalties for 1948, 1949, and 1950, imposed under section 294 (d) (1) (A) and (d) (2), Internal Revenue Code, by respondent in his deficiency notice, we sustain the respondent's determination and hold that he properly added both penalties for each of these years.

It has not been shown that the failure of petitioners to file declarations of estimated tax for the years 1948, 1949, and 1950 within the time prescribed was due to reasonable cause and was not due to willful neglect. Undoubtedly, therefore, the record sustains respondent's

same effect and must be given the same consideration as if it were legally admissible; hence it is entitled to its full and natural probative effect, and may establish a fact in issue, and sustain a verdict or judgment based thereon. * * * [64 C. J. 224].

NOTE: Cited in support of above are authorities from many Federal and state courts.

determination of penalties under section 294 (d) (1) (A) for each of these years.

The failure of petitioners to file declarations of estimated tax within the time prescribed for each of these years necessarily resulted in a substantial understatement of estimated tax. We can not agree with petitioners' contention that because they filed no declaration of estimated tax under section 294 (a) (1), they can not be held to have violated section 294 (d) (2) for making a substantial underestimate of the estimated tax. The regulation [2] provides that when a declaration of estimated tax is not filed, the amount of the estimated tax, for the purpose of the provisions of section 294 (d) (2) shall be zero, and that is the basis used by respondent in computing the deficiency under this subsection. The petitioners attack the regulation as being void in that it "distorted the will of Congress." The regulation is couched in the same language used by Congress in its Conference Report [2] on legislation covering this subject and follows the procedure therein prescribed. It therefore appears that the regulation actually reflects, rather than distorts, the will of Congress, and we uphold its validity.

Petitioner used the inventory method of computing gross profit in 1948 and 1950 from sales of whiskey. The respondent decreased the amounts reported for purchases by the cost of whiskey which was confiscated during those years and not compensated for by insurance or otherwise. The primary difference between the parties is whether the cost of the whiskey constitutes part of the cost of goods sold by petitioner.

Respondent agrees with petitioner that *Lela Sullinger*, 11 T. C. 1076, requires that the cost of goods sold be taken into account in arriving at gross income. Here, the whiskey involving the controverted amount was confiscated, and thereafter was not available for sale or actually sold by the petitioner during the taxable years. Since the goods were not sold and after seizure were not on hand for sale, the costs may not be used in any computation of gross receipts from sales under section 113. See *Weather-Seal Manufacturing Co.*, 16 T. C. 1312, affd. 199 F. 2d 376; *Commissioner* v. *Weisman*, 197 F. 2d 221.

Petitioner contends in the alternative that the amounts are deductible as losses under the provisions of section 23 (e). He recognizes the rule, applied in numerous cases, of denying expense and loss deductions because allowance would frustrate sharply defined state or Federal policies but says that the rule was "badly crippled" in *Lilly* v. *Commissioner*, 343 U. S. 90.

---

[2] * * * In the event of a failure to file the required declaration, the amount of the estimated tax for the purposes of this provision [section 294 (d) (2)] is zero. [Supplement to Regulations 111, sec. 29.294-1 (b) (3) (A), p. 438; Conference Rept. H. Rept. No. 510, 78th Cong., 1st Sess., p. 56].

In *Commissioner* v. *Heininger*, 320 U. S. 467, the Court said that if deduction of the litigation expenses involved were to be denied "it must be because allowance of the deduction would frustrate the sharply defined policies of" the statute authorizing issuance of fraud orders by the Postmaster General. It concluded that allowance of the expenses "would not frustrate the policy of these statutes." The Court's remarks disclose recognition of the rule. *National Brass Works* v. *Commissioner*, 182 F. 2d 526; *William L. Butler*, 17 T. C. 675; *Pacific Mills*, 17 T. C. 705. The *Lilly* case, involving the deductibility as business expenses of amounts paid by an optician to doctors out of the retail price charged for filling their prescriptions, discussed its *Heininger* opinion and concluded that "Neither that decision nor the rule suggested by it requires disallowance of petitioners' expenditures as deductions in the instant case." It then remarked, under an assumption "for sake of argument," that expenses may not be allowable because they violate public policies, that "The policies frustrated must be national or state policies evidenced by some governmental declaration of them" and that during the taxable years involved in the case there were no such policies in effect. We do not regard the *Lilly* case as opposed to the application of the rule. *Charles A. Clark*, 19 T. C. 48.

The extent to which the rule has been applied is shown by the various cases collected in *Lawrence A. Wagner*, 30 B. T. A. 1099, and *Standard Oil Co.*, 43 B. T. A. 973, affd. 129 F. 2d 363. The decisions disclose that each case is controlled by its peculiar facts.

Statutes of Oklahoma prohibit, under penalty of fine and imprisonment, the sale of intoxicating beverages or possession in excess of one quart thereof. Okla. Stats. Ann., Title 37, sections 1, 6. Petitioner was aware throughout the taxable years that the operation of his business was in violation of the laws of Oklahoma; hence there is no problem here as to his intention at the time of acquisition of the whiskey. His volume of sales and numerous violations of the state policy is indicated by gross sales of about $260,000 and $273,000 which he reported in returns filed for 1948 and 1950.

Petitioner acquired no property rights of any kind in the confiscated whiskey. Okla. Stats. Ann., Title 37, section 72. This provision, with other prohibitory liquor laws of Oklahoma, rendered the intoxicating liquor held by petitioner contraband property without property rights therein and he was not entitled to a return of the liquor even though it may have been seized under an illegal search warrant. *Lee* v. *State*, 180 Okl. 643, 71 P. 2d 1090. The statutes of Oklahoma and the interpretation thereof by the courts of Oklahoma are cited by the respondent, without discussion, to require a denial of the claimed deductions upon the ground that petitioner had no property rights in the contraband liquor.

While the confiscated liquor constituted property, petitioner had not at any time rights therein sufficient to avoid confiscation by the state without compensation for loss. Only lack of complete administration of the existing statutes prevented petitioner from losing the whiskey the moment he was found with it in Oklahoma.

The point raised by respondent need not be considered to a conclusion for we are satisfied that the so-called public policy rule is applicable and bars allowance of the amounts in controversy, and so hold.

As to negligence penalties for 1948 and 1950 imposed under section 293 (a) in respondent's deficiency notice, which petitioners assigned as error, respondent on brief adopts the finding made by Commissioner Wendelken in his report that no part of these deficiencies was due to negligence, and accordingly we hold for petitioners on this issue.

When determining the deficiencies and imposing the penalties, respondent computed interest thereon without including the amount as part of the deficiencies. The interest which, with the deficiencies, has been assessed is set forth in the petition as amounts in controversy and petitioners pray that it be eliminated. No specific issue was raised in regard to the interest and it is not discussed on brief. No consideration has been given the question in view of lack of jurisdiction of this Court over matters relating to interest. *Gussie P. Chapman,* 14 T. C. 943, affd. 191 F. 2d 816.

*Decision will be entered under Rule 50.*