Leroy B. Williams v. Commissioner.
Williams v. Commissioner
Docket No. 46516.
United States Tax Court
T.C. Memo 1955-325; 1955 Tax Ct. Memo LEXIS 12; 14 T.C.M. (CCH) 1268; T.C.M. (RIA) 55325; December 14, 1955
*12 1. The parties are in agreement that petitioner kept no adequate books and records to enable the Commissioner to determine petitioner's net income for the taxable years. The Commissioner, in his determination of deficiencies for the taxable years 1950 and 1951, has used the net worth and expenditures method. Petitioner in his assignments of error does not contest the items of assets which were included in the Commissioner's statement of net worth. He does contend that at the beginning of the net worth period a substantial account receivable then owned by petitioner should be included in his assets and that in 1950 and 1951, liabilities which he owed should be included in the Commissioner's net worth statement. Held, petitioner is sustained in his contention that an account receivable of a substantial amount should be included in a statement of assets owned at the beginning of the net worth period. The remaining part of this account receivable still due at the end of 1950 should be included in petitioner's assets owned at that time. Held, further, a liability which petitioner incurred in the purchase of real estate in February 1950, and which was still unpaid at the end of 1950, should *13 be included in his list of liabilities still owing at the end of 1950 and the balance still unpaid at the end of 1951 should be included in his list of liabilities at the end of that year. Held, further, that distributions made to petitioner in 1951 by Club Harlem, Inc., were not loans to petitioner but were distributions of taxable income to him. They should not be included in his list of liabilities at the end of 1951. 2. The Commissioner in an amended answer alleged that petitioner had substantially overstated his deductions for depreciation in both taxable years and that the Commissioner had erroneously allowed these deductions in their entirety whereas he should have allowed them only in part and asks for increased deficiencies. Held, the Commissioner is sustained in his affirmative allegations that petitioner's deductions for depreciation in 1950 and 1951 were overstated and the correct amount will be redetermined in a recomputation under Rule 50. 3. The Commissioner's determination of fraud penalties for 1950 are not sustained. Whatever deficiency there will be for that year, if any, in a computation under Rule 50, will be due to the adjustments made to petitioner's depreciation *14 deduction and other adjustments not contested. These were not stated &8 petitioner in his return with intent to evade tax. Held, further, the Commissioner's imposition of a fraud penalty for 1951 is sustained. It is held that petitioner's omission from his return in 1951 of more than $14,000 taxable income which he received from Club Harlem, Inc., was done with intent to evade tax. 4. The petitioner filed no declaration of estimate of tax for either 1950 or 1951. The Commissioner, in his determination of the deficiencies, imposed penalties under section 294(d)(1)(A) and section 294(d)(2) of the 1939 Code. Petitioner has not shown reasonable cause for his failure to file declarations of estimated tax for either 1950 or 1951. Held, the Commissioner's imposition of penalties under section 294(d)(1)(A) and section 294(d)(2) is sustained. Robert M. Taylor, Esq., and George P. Walker, Esq., for the petitioner. Norman A. Peil, Jr., Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion This is a proceeding for redetermination of deficiencies in income taxes and penalties of the petitioner as follows: Sec. 293(b)
Sec. 294(d)(1)(A)
Sec. 294(d)(2)
Year
Deficiency
Penalty
Penalty
Penalty
1950
$9,278.69
$4,639.35
$927.86
$556.72
1951
2,859.14
1,429.57
285.91
171.55
Respondent has claimed increased deficiencies in income taxes and penalties, for reasons which will hereinafter be stated, over those determined in the notice of deficiency, as follows: Deficiency
Increased
Total
per
Income Taxes:
Year
Statutory
Deficiency
Deficiency
Notice
1950
$9,278.69
$536.79
$9,815.48
1951
2,859.14
370.89
3,230.03
Sec. 293(b) Penalties:
1950
4,639.35
268.39
4,907.74
1951
1,429.57
185.45
1,615.02
Sec. 291(d)(1)(A) Penalties:
1950
927.86
76.29
1,004.15
1951
285.91
37.09
323.00
Sec. 294(d)(2) Penalties:
1950
556.72
45.77
602.49
1951
171.55
22.25
193.80
*16 The deficiency for 1950 is due to the addition to the net income reported by petitioner on his return of $25,744.70. This adjustment is explained in the deficiency notice as follows: "The Deputy developed from investigation the Net Worth Statements of the taxpayer as of December 31, 1949, 1950 and 1951. From the analysis of these Net Worth Statements an appreciable increase during 1950 was evident. To this increase in Net Worth, the Deputy added provable personal expenditures, and $1,000.00 figure as the estimated remaining Cost of Living for items not included in the provable list." Respondent, in his deficiency notice, summarizes his computation for 1950, as follows: "Net Worth December 31, 1950
$50,059.47
Net Worth December 31, 1949
22,521.57
Increase in Net Worth for year 1950
27,537.90
Add: Provable Personal Items
720.77
Estimated Living Expenses
1,000.00
$29,258.67
Deduct: Income Reported
$1,384.63
Depreciation
2,129.34
3,513.97
Additional Income
$25,744.70"
The deficiency for 1951 is due to the addition to the loss reported by petitioner in his return of $14,437.02 additional income. This adjustment is explained in *17 the deficiency notice as follows: "The Deputy developed from investigation the Net Worth Statements of the taxpayer as of December 31, 1949, 1950 and 1951. From the analysis of these Net Worth Statements an appreciable increase during 1951 was evident. To this increase in Net Worth, the Deputy added provable personal and $1,000.00 figure as the estimated remaining Cost of Living for items not included in the provable list." In his deficiency notice the Commissioner summarizes his computation of the net income increase in petitioner's additional income for 1951, as follows: "Net Worth December 31, 1951
$60,966.39
Net Worth December 31, 1950
50,059.47
Increase in Net Worth for 1951
10,906.92
Add: Personal Items Provable
2,227.26
Estimated Remaining Cost of Living
1,000.00
Taxes Paid
226.00
$14,360.18
Loss Reported
$2,418.72
Depreciation
2,341.88
76.84
Additional Income for 1951
$14,437.02"
The petitioner contests the determination of the Commissioner for each year by appropriate assignments of error and denies that there should be any deficiency or penalties for either 1950 or 1951. Findings of Fact Part of the facts *18 have been stipulated and the facts so stipulated are incorporated herein by reference. Petitioner Leroy B. Williams resides in Atlantic City, New Jersey. He filed returns for the taxable years 1950 and 1951 with the Collector for the First District of New Jersey at Camden. Petitioner's return for 1950 showed an adjusted gross income of $1,384.63, consisting of gross building rentals of $10,840, less claimed depreciation, repairs, and other expenses of $9,455.37. Petitioner's return for 1951 showed a net loss of $2,418.72, consisting of gross building rentals of $6,390, less claimed depreciation, repairs, and other expenses of $8,996.22, and dividend income of $187.50. On each of these returns petitioner listed his occupation as "Rental Bldgs." Petitioner was indicted and tried in the United States District Court for the District of New Jersey on two counts involving the taxable years 1950 and 1951 for violation of section 145(b) of the Internal Revenue Code of 1939. The indictment charged that petitioner's true net income for the calendar year 1950 was the sum of $25,129.33, and that his true net income for the calendar year 1951 was the sum of $10,018.30. After trial by jury, *19 petitioner was found guilty on both counts on March 12, 1953. The judgment of the District Court was affirmed on appeal to the Court of Appeals for the Third Circuit, 208 F.2d 437. Petitioner did not maintain adequate books and records of his income and expenses for the taxable years 1950 and 1951. On December 31, 1949, 1950, and 1951, petitioner had cash on hand of not in excess of $100. Petitioner opened a checking account at the Boardwalk National Bank, sometimes hereinafter referred to as The Bank, Atlantic City, on April 27, 1950. The balance in that account at December 31, 1950, was $324.92 and the balance on December 31, 1951, was $209.18. Petitioner owned on December 31, 1949, December 31, 1950, and December 31, 1951, capital stock of the Supreme Liberty Life Insurance Company which cost him $3,000. Petitioner purchased the land and building known as 1623 1/2 Arctic Avenue, Atlantic City, in 1927, at a cost of $22,711.61. Petitioner owned these premises on December 31, 1949, December 31, 1950, and December 31, 1951. The total cost of 1623 1/2 Arctic Avenue is allocated between land and building, as follows: Land
$13,976.73
Building
8,734.88
$22,711.61
*20 Petitioner purchased the land and building thereon known as 30-32 North Kentucky Avenue, Atlantic City, in 1930, at a cost of $37,147.72. Petitioner owned these premises on December 31, 1949, December 31, 1950, and December 31, 1951. The total cost of 30-32 North Kentucky Avenue is allocated between land and building, as follows: Land
$29,617.87
Building
7,529.85
$37,147.72
Petitioner and a brother, Oliver Williams, purchased, as tenants in common, the land and premises known as 723 Arctic Avenue, Atlantic City, in 1919, at a cost of $5,000. Petitioner and his brother owned these premises as tenants in common on December 31, 1949, December 31, 1950, and December 31, 1951. Petitioner purchased furniture in 1949 at a cost of $390.85, and he owned this furniture on December 31, 1949, December 31, 1950, and December 31, 1951. Petitioner made improvements in 1945 at a cost of $2,030.72. Petitioner owned these improvements on December 31, 1949, December 31, 1950, and December 31, 1951. On December 9, 1946, petitioner borrowed from The Bank the sum of $15,000, this loan being secured by a mortgage on 30-32 North Kentucky Avenue and 37 Surf Place and 1623 1/2 Arctic *21 Avenue, Atlantic City. Settlement on this mortgage was made through the Chelsea Title and Guaranty Company, hereafter sometimes called The Title Company, Atlantic City. The settlement sheets, under the caption "Charges Against Seller," contained the following: "Clifton L. Williams - mtge.
$12,000.00
Interest from Nov. 20 to 12-9
at 6%
38.00" The net proceeds on this loan were paid by checks of The Title Company, dated December 11, 1946, as follows: Check for $12,038, payable to Clifton L. Williams and endorsed by Clifton L. Williams; and check for $2,808, payable to Leroy B. Williams and endorsed by Leroy B. Williams and Clifton L. Williams. This mortgage was canceled of record on March 11, 1948, at 9:00 a.m. On December 31, 1949 and December 31, 1950, petitioner was indebted to Jacob Hoffman in the amount of $20,000, which indebtedness was secured by a mortgage dated March 5, 1948, on 32 North Kentucky Avenue and 37 Surf Avenue and 1623 1/2 Arctic Avenue. Settlement for this mortgage was made through The Title Company. Petitioner received check of The Title Company, dated March 6, 1948, in the amount of $8,508.44, which was made payable to Leroy B. Williams and *22 endorsed by Leroy B. Williams and Clifton L. Williams. On October 1, 1951, petitioner reduced this indebtedness by payment to Jacob Hoffman of $5,000 in cash. On December 31, 1951, the balance outstanding on this indebtedness was $15,000. On February 16, 1950, Samuel Singer, sometimes hereinafter referred to as Samuel, purchased the land and buildings known as 34-36 North Kentucky Avenue, and 38-40 North Kentucky Avenue, Atlantic City, from the estate of Adelaide Specht for a consideration of $17,626.93; on the same date Samuel conveyed 34-36 North Kentucky Avenue to petitioner for a consideration of $8,750 in addition to one-half of the settlement costs amounting to $86.37 incurred by Samuel in his purchase from the aforesaid estate. On May 1, 1950, petitioner paid the Coast Wrecking Company, by check, the sum of $200 for removal of the building located at 34-36 North Kentucky Avenue. During the taxable year 1950, A. L. Brooks, registered architect, prepared plans, specifications, and supervised construction of a store building at 34-36 North Kentucky Avenue. His fee of $1,250 was paid by checks of petitioner, as follows: April 27, 1950
$ 500.00
May 18, 1950
200.00
June 21, 1950
200.00
July 28, 1950
350.00
Total
$1,250.00
*23 On August 11, 1950, petitioner paid $240 by check to Peter Steward for iron work done at 34-36 North Kentucky Avenue. During the taxable year 1950, the Massett Building Company, contractors, erected a brick building at 34-36 North Kentucky Avenue for a total cost of $25,364, of which $10,622.60 was paid by checks of petitioner. The balance of $14,741.40 was paid by check of The Title Company dated July 29, 1950, and represented the proceeds of a mortgage in the gross amount of $15,000 with The Bank placed by petitioner on 34-36 North Kentucky Avenue. During the taxable year 1950, petitioner made the following capital improvements and paid for the same by check, as follows: Vendor
Amount
Date of Check
Dugan, Fry and Spence
$ 27.00
July 15, 1950
Seaboard Appliance & Refrigeration
June 3, 1950 (In the
Company
amount
(Two Air Conditioners)
2,746.00
$550of, Balance
financed
through G.M.A.C. Loan)
Sanitary Floors, Inc. (Installing
500.00
October 6,1950
Asphalt Tile)
Kay Electric Supply Co.
445.31
August 7, 1950
$247.90
September 5, 1950
197.41
Grossman's Kensington Carpet
797.15
September 5, 1950
Company
$4,515.46
*24 During the taxable year 1951, petitioner made the following capital improvements and paid for the same by check, as follows: Vendor
Amount
Date of Check
Grossman's Kensington
$ 567.50
September 11, 1950
Carpet Company
Atlantic City Neon Company
October 24, 1951
$400.00
(Remodeling store
fronts at 1623 1/2 Arctic
1,100.00
November 30, 1951
700.00
Ave.)
$1,667.50
On July 29, 1950, petitioner borrowed $15,000 from The Bank. This loan was secured by a mortgage on 34-36 North Kentucky Avenue. On November 1, 1950, petitioner paid $5,000 on this indebtedness, leaving a balance owing at December 31, 1950, of $10,000. During the taxable year 1951, payments were made by petitioner on this indebtedness as follows: February 28, 1951
$1,000.00
June 28, 1951
1,000.00
October 30, 1951
1,000.00
$3,000.00 The unpaid balance on this indebtedness at December 31, 1951, was $7,000. On October 27, 1950, petitioner and his brother, Oliver Williams, borrowed $3,000 from William M. Schwab. This loan was secured by a mortgage on 723 Arctic Avenue. No payments were made on this indebtedness during the taxable year 1950. During the taxable *25 year 1951, payments against such indebtedness were made on April 27, 1951 and on October 27, 1951, each payment being in the amount of $150. The balance of the indebtedness of petitioner and Oliver Williams at December 31, 1951, was $2,700. Petitioner became indebted to the General Motors Acceptance Corporation on account of the purchase of two air conditioning units during the taxable year 1950. The balance of this indebtedness at December 31, 1950, was $1,908.17, and at December 31, 1951, balance was $703.01. The following personal expenditures were paid for by check of the petitioner during the taxable year 1950: Vendor
Purpose
Amount
Liberty Hotel Co., Atlantic City, N.J.
Room & Telephone
$612.75
Dr. Oscar Harris, Atlantic City, N.J.
Professional Services
91.00
S. Rosenberg, Atlantic City, N.J.
Home Glass Repair
17.00
$720.75
The following personal expenditures were paid for by check of the petitioner during the taxable year 1951: Vendor
Purpose
Amount
Liberty Hotel Co., Atlantic
Room & Telephone Service
$ 627.30
City, N.J.
Dr. W. Oscar Harris, Atlantic
Professional Services
88.00
City, N.J.
Taft Hotel, New York City, N.Y.
Room
31.50
Nathan Levin Furs, Inc.,
Storage & Insurance
100.00
Atlantic City, N.J.
Dr. Meyer Baylinson, Atlantic
Professional Services
330.00
City, N.J.
United Fund of Atlantic Co.
Donation
25.00
Oscar Lewine
Legal Fee
25.00
L & C Mayer Co.
Furniture for Williams residence
662.70
Ross Work, Inc.
Wallpaper
187.76
Dr. Hilton S. Read
Professional Services
135.00
Dr. J. Hurlong Scott
Professional Services
15.00
Fed. Inc. Taxes 1950
226.00
$2,453.26
*26 On November 6, 1950, The Bank loaned the sum of $10,000, which loan was evidenced by a note for that amount, made by Samuel and endorsed by Leroy B. Williams and Laura Singer, who was the wife of Samuel. On February 6, 1951, this loan was satisfied by the payment of $250 on principal to The Bank and the execution of a renewal note in the amount of $9,750. On May 7, 1951, this note of February 6, 1951, was satisfied by the payment of $250 on principal to The Bank and the execution of a renewal note in the amount of $9,500. On August 7, 1951, the note of May 7, 1951, was satisfied by the payment of $500 on principal to The Bank and the execution of a renewal note in the amount of $9,000. On September 7, 1951, the note of August 7, 1951, was satisfied by the payment of $1,000 on principal to The Bank and the execution of a renewal note in the amount of $8,000. On November 7, 1951, the note of September 7, 1951, was satisfied by the payment of $1,000 on principal to The Bank and the execution of a renewal note in the amount of $7,000. On each of these renewal notes Samuel was the maker and Leroy B. Williams and Laura Singer were the endorsers. The notes dated November 7, 1951 and August 7, 1951, were *27 endorsed on the backs thereof in the following manner.. Samuel Singer, Leroy B. Williams, Laura Singer, Samuel Singer On November 6, 1950, Samuel received $10,000, less discount applicable thereto, for the note dated November 6, 1950. Respondent's revenue agents, in an examination for the purpose of determining petitioner's income tax liability for the years 1950 and 1951, compiled a net worth statement, as follows: Net Worth Statements
1949, 1950, 1951
ASSETS
Dec. 31, 1949
Dec. 31, 1950
Dec. 31, 1951
Cash on Hand
$ 100.00
$ 100.00
$ 100.00
Cash in Bank
324.92
209.18
Insurance
3,000.00
3,000.00
3,000.00
Real Estate
1623 1/2 Arctic Ave. (1927)
22,711.61
22,711.61
22,711.61
30-32 N. Kentucky & 37 Surf Pl.
37,147.72
37,147.72
37,147.72
(1930)
723 Arctic Ave.
2,500.00
2,500.00
2,500.00
34-36 N. Kentucky Ave. (1950)
Land
9,036.37
9,036.37
Building
26,854.00
26,854.00
Improvements (1945)
2,030.72
2,030.72
2,030.72
Furniture & Fixtures Per Return
390.85
390.85
390.85
34-36 N. Kentucky (1950)
4,730.78
4,730.78
34-36 N. Kentucky (1951)
1,667.50
Total Assets
$67,880.90
$108,826.97
$110,378.73
LIABILITIES
Mortgages Payable
Hoffman
$20,000.00
$ 20,000.00
$ 15,000.00
Boardwalk National Bank
10,000.00
7,000.00
Schwab
1,500.00
1,350.00
General Motors Corp.
1,908.17
703.01
Reserve for Depr.
20,328.03
21,483.18
22,874.06
Total Liabilities
$40,328.03
$ 54,891.35
$ 46,927.07
Net Worth
$27,552.87
$ 53,935.62
$ 63,451.66
Increase in Net Worth
$ 26,382.75
$ 9,516.04
*28 Respondent's revenue agents, who made the examination above stated and compiled the net worth statement set out above, also made a computation of petitioner's net income based thereon, as follows: COMPUTATION OF NET INCOME
1950
1951
Net Worth - End of Period
$53,935.62
$63,451.66
Net Worth - Beginning of Period
27,552.87
53,935.62
Increase in Net Worth
$26,382.75
$ 9,516.04
Add: Provable Personal Items
720.77
2,453.26
Estimated Cost of Living
1,000.00
1,000.00
ADJUSTED GROSS INCOME
$28,103.52
$12,969.30
Less Standard Deduction
1,000.00
1,000.00
NET INCOME
$27,103.52
$11,969.30
In addition to the assets held by petitioner on December 31, 1949, as shown by respondent's net worth statement incorporated in these findings above, petitioner was owed the sum of $14,898.47 by Club Harlem, Inc., as a loan or account receivable as of December 31, 1949. In addition to the assets held by petitioner on December 31, 1950, as shown by respondent's net worth statement incorporated in these findings, petitioner was owed the sum of $1,806.03 by Club Harlem, Inc., as a loan or account receivable as of December 31, 1950. In addition to the liabilities *29 owed by petitioner as shown by respondent's net worth statement incorporated in these findings, he owed Samuel the sum of $8,836.37, as a loan payable as of December 31, 1950. This same liability was reduced by payments which petitioner made to Samuel in 1951, in the amount of $3,000. Therefore, as of December 31, 1951, petitioner owed Samuel the sum of $5,836.37. Club Harlem, Inc., paid obligations of petitioner by checks totaling $2,800 in the year 1948, and by checks totaling $5,600 in the year 1949. These payments were made in reduction of an indebtedness which Clifton L. Williams had owed petitioner and which indebtedness was assumed by Club Harlem, Inc., when it was incorporated in 1948 and all of the assets of Clifton L. Williams were conveyed to it. In the year 1950, Club Harlem, Inc., paid obligations of petitioner by checks in the amount of $7,000 and paid him in cash $6,000 to pay some of his obligations. These sums were paid in reduction of the indebtedness owed to petitioner by Club Harlem, Inc. After the payment of these sums to petitioner by Club Harlem, Inc., the latter was still indebted to petitioner in the sum of $1,806.03 on December 31, 1950. In 1951, Club *30 Harlem, Inc., paid obligations of petitioner in the amount of $9,500 and made cash payments to him of $7,000. These payments paid off the balance of the debt which Club Harlem, Inc., owed to petitioner and the remainder did not represent loans to petitioner but were either paid to him as disbursement of part of the profits of Club Harlem, Inc., or as compensation to petitioner for services which he had rendered to Club Harlem, Inc., in the year 1951 and in prior years. Depreciation In petitioner's return for 1950, he took depreciation deduction of $2,129.34. This depreciation deduction was based on the following schedule: Brick Bldg.
1932
$20,000.00
0
$ 7,000.00
0
$13,000.00
50
34
$ 400.00
Brick Bldg.
1929
20,000.00
0
12,000.00
0
8,000.00
33
13
600.00
Improvements
1945
2,030.72
0
1,015.35
0
1,015.37
10
5
203.07
Furniture
1946
390.85
0
312.68
0
78.17
5
1
78.17
Alterations
1/50
409.00
0
0
0
409.00
10
10
40.90
Building
4/50
24,800.00
0
0
0
24,800.00
40
40
465.02
Furn. & Fix.
4/50
4,562.39
0
0
0
4,562.39
10
10
342.18
$2,129.34
In his determination of the *31 deficiency for 1950, the Commissioner allowed the claimed deduction for depreciation of $2,129.34. In petitioner's return for 1951, petitioner took depreciation deduction of $2,341.88. The depreciation deduction was based on the following schedule: 5.
Remaining
cost
2. Date
3. Cost or
4.
or other
Depreciation
basis
allowed
1. Kind of property
acquired
other basis
in prior years
to be
recovered
Brick Building
1932
$20,000.00
$ 7,400.00
$12,600.00
Brick Building
1929
20,000.00
12,600.00
7,400.00
Improvements
1945
2,030.72
1,218.42
812.30
Furniture
1946
390.85
390.85
Alterations
1/50
409.00
40.90
390.85
Building
4/50
24,800.00
465.02
24,334.98
Furniture and Fixtures
4/50
4,562.39
342.18
4,220.21
Improvements
11/51
1,100.00
110.00 per yr.
1,100.00
Total
6.
7.
8.
Life used in
Estimated
Depreciation
life
accumulating
from begin-
allowable
1. Kind of property
depreciation
ning of year
this year
Brick Building
50
33
$ 400.00
Brick Building
33 1/2
12 1/3
600.00
Improvements
10
4
203.07
Furniture
5
0
Alterations
10
9
40.90
Building
40
39
620.00
Furniture and Fixtures
10
9
468.91
Improvements
10
10
9.00
Total
$2,341.88
*32 The Commissioner, in his determination of the deficiency for 1951, allowed petitioner the deduction of $2,341.88 for depreciation which he claimed on his return. A net loss of $2,418.72 was shown on that return. The Commissioner, in his amended answer in which he asks for increased deficiencies in both years, alleges that, instead of the amounts deducted for depreciation in 1950 and 1951 in the amounts of $2,129.34 and $2,341.88, respectively, there should have been deducted $1,155.15 for 1950 and $1,390.88 for 1951, as shown by the following schedule: Depreciation Schedule
Estimated
Depreciation
Esti-
Remain-
Date
Cost or
Allowed or
Remaining
mated
ing Life
Kind of
Acquired
Other Basis
Allowable
Cost
Life
- 1950
Property
1623 1/2
1927
$ 8,734.89
$12,000.00
33
Arctic Ave.
30-32 N.
1930
7,529.85
7,000.00
$ 529.85
50
34
Kentucky Ave.
Furniture and
1946
390.85
312.68
78.17
5
1
Fixtures
Improvements
1945
2,030.72
1,015.35
1,015.35
10
5
34-36 N.
4/1950
26,854.00
26,854.00
40
40
Kentucky Ave.
Improvements
4/1950
4,730.78
4,730.78
10
10
Improvements
11/1951
1,667.50
1,667.50
10
*33 Estimated
Depreciation
Remaining
Depreciation
Kind of Property
1950
Life - 1951
1951
1623 1/2 Arctic Ave.
30-32 N. Kentucky Ave.
$ 15.58
33
$ 15.58
Furniture and Fixtures
78.17
Improvements
203.07
4
203.07
34-36 N. Kentucky Ave.
503.52
39
671.36
Improvements
354.81
9
473.08
Improvements
27.79
$1,155.15
$1,390.88
Respondent is correct in his computation of depreciation as shown above. Petitioner is entitled to depreciation deductions of $1,155.15 for 1950, and $1,390.88 for 1951. No part of the deficiency for 1950 is due to fraud with intent to evade tax. Part of the deficiency for 1951 is due to fraud with intent to evade tax. Petitioner did not file a declaration of estimated tax for 1950 and he did not file a declaration of estimated tax for 1951. Petitioner has not shown that his failure to file a declaration of estimated tax for 1950 and 1951 was due to reasonable cause and not to willful neglect. Opinion BLACK, Judge: Before entering upon a discussion of the issues to be decided in this case it would perhaps be advisable to clear some matters out of the way upon which both parties seem to agree. It *34 is agreed by the parties that petitioner did not maintain adequate books and records of his income and expenses for the years 1950 and 1951. This being true, the parties agree that the Commissioner was justified in using the net worth and expenditures method in determining petitioner's taxable income for the two years in question. Since petitioner admittedly did not keep adequate books and records of his income and expenses for the taxable years it is clear that respondent was justified in resorting to the net worth and expenditures method (hereinafter referred to simply as the net worth method) in determining petitioner's taxable income. United States v. Johnson, 319 U.S. 503; United States v. Williams, (C.A. 3, 1953) 208 Fed. (2d) 437. The net worth statement which respondent has used in his determination of the deficiencies for both years has been included in full in our Findings of Fact. This is done to make clear what respondent has done in his determination of the deficiencies. Some of the items in this net worth statement are not disputed by petitioner. In fact, petitioner agrees to the correctness of most of the items in the net worth statement. What *35 he does contend is that certain assets which petitioner owned at the beginning period December 31, 1949, are not included and also that certain liabilities owed by petitioner during the course of the period covered in the net worth statement are not included in it, and should be included. Petitioner claims the respondent failed to include in his opening net worth statement a loan or account receivable of $14,898.47 owed to petitioner by Club Harlem, Inc., as of December 31, 1949, the respondent's starting point. Also that the respondent failed to include in his net worth schedule (1) a loan or account receivable of $1,806.03, owed to petitioner by Club Harlem, Inc., as of December 31, 1950; a loan payable of petitioner amounting to $10,000 due primarily to Samuel Singer and contingently to the Boardwalk National Bank who made a loan of said amount on a note signed by Samuel and endorsed by Leroy B. Williams, petitioner, as of December 31, 1950; (2) a loan payable of petitioner amounting to $7,000, due primarily to Samuel and contingently to The Bank on a note signed by Samuel and endorsed by Leroy B. Williams, petitioner, as of December 31, 1951; and (3) a loan or account payable *36 of petitioner amounting to $14,771.31, for moneys loaned and advanced to him by Club Harlem, Inc., in 1951, as of December 31, 1951. These, as we understand petitioner's argument, are the changes which he contends should be made in respondent's net worth statement. We do not understand that he contends for any other changes. We will take up and discuss, in what we conceive to be the logical order, these respective contentions of petitioner. They represent, in the main, the issues which we have to decide in this proceeding. It should be here remarked that the decision which we shall reach in this proceeding on the issues involved is not reached on the presumptive correctness of the Commissioner's determination of the deficiencies. In this proceeding there has been a great deal of evidence, much of it stipulated and also oral and documentary evidence, by both parties and our decision is based on the evidence which has been carefully weighed and considered. Some of the differences between the parties have not been easy to decide. There is conflicting testimony and circumstances which are not always possible to reconcile. However, after a careful consideration of the facts which have *37 been stipulated and the evidence, oral and documentary, which was received at the hearing, we have reached the following conclusions on the objections which petitioner has raised to the net worth statement used by the Commissioner in his determination. Asset of $14,898.47 - Account Receivable at Beginning of Period We think the evidence supports petitioner's contention that on December 31, 1949, he owned a loan or account receivable of $14,898.47 against Club Harlem, Inc. Our findings of fact find this to be true. Therefore, the net worth statement should include as an asset at December 31, 1949, a loan receivable against Club Harlem, Inc., of $14,898.47. Petitioner concedes that Club Harlem, Inc., paid him during the year 1950, $7,000 in checks and $6,000 in cash and it is his contention that this $13,000 was payment on the indebtedness which Club Harlem, Inc., owed him. This would seem to leave a balance at December 31, 1950, of $1,898.47. Petitioner, in his statement of respondent's alleged errors, speaks of this balance due on his account receivable which should be included as assets as of December 31, 1950, as being $1,806.03. The difference is unexplained. It is probably *38 due to some small payment on the account not brought to our attention. In view of the statement in petitioner's brief we shall consider this amount as being $1,806.03, instead of $1,898.47. Petitioner contends that this $1,806.03 should be included as an asset of petitioner's at December 31, 1950. We think, on the whole record, petitioner's contention in this respect should be sustained and we so hold. Petitioner's Claim He Owed Club Harem, Inc., $14,771.31, December 31, 1951 Petitioner concedes that in 1951, he received from Club Harlem, Inc., $9,500 in checks and $7,000 in cash. He contends that $1,806.03 of this amount finished the payment of the loan which Club Harlem owed him and that the balance represented a loan to him by Club Harlem. Here again the figures of petitioner do not correspond with the record for when $1,806.03 is subtracted from $16,500, the result is $14,693.97, instead of $14,771.31 used by petitioner in his brief. Respondent contends that the entire $16,500 which petitioner received from Club Harlem in 1951 represented taxable income to petitioner, either as dividends from Club Harlem or as compensation for services which petitioner rendered Club Harlem *39 in 1951 and prior years. In harmony with our conclusion that on December 31, 1949, Club Harlem owed petitionor $14,898.47, we hold that $1,806.03 of the $16,500 which petitioner concedes that he received in 1951 from Club Harlem was in payment of the remainder of the debt which the Club owed him. However, we are not convinced that the remainder of $14,693.97 represented a loan to petitioner from Club Harlem. There is no evidence to show that petitioner gave Club Harlem any note or mortgage to evidence this indebtedness of $14,693.97. There is no evidence to show that Club Harlem carried any account receivable on its books as representing this alleged indebtedness against petitioner. It seems to be proved clearly that whenever petitioner wanted any money in 1951, he would just go to Club Harlem and get it. No evidence of any indebtedness was given. Cf. William C. Baird, 25 T.C. , filed December 6, 1955. Considering the evidence as a whole, we hold that this $14,693.97 paid to petitioner in 1951 over and above the amount of the indebtedness which Club Harlem owed petitioner December 31, 1950, did not represent a loan to petitioner. It represented taxable income which petitioner received *40 from Club Harlem in 1951. Therefore, we deny petitioner's contention that this $14,693.97 (stated in petitioner's brief as $14,771.31) should be included as a liability of petitioner as of December 31, 1951, in respondent's net worth statement. Petitioner's Contention that at December 31, 1950, He Owed Samuel Singer $10,000 We next take up petitioner's contention that there should be included as a liability owing by him on December 31, 1950, a loan payable of $10,000 due primarily to Samuel Singer and contingently to the Boardwalk National Bank. It has been stipulated that: "On February 16, 1950, Samuel Singer purchased the land and buildings known as 34-36 North Kentucky Avenue, and 38-40 North Kentucky Avenue, Atlantic City, New Jersey, from the Estate of Adelaide Specht for a consideration of $17,626.93, on the same date said Samuel Singer conveyed 34-36 North Kentucky Avenue to petitioner for a consideration of $8750.00 in addition to one-half of the settlement costs amounting to $86.37 incurred by Samuel Singer in his purchase from the aforesaid estate." Petitioner testified at the hearing that he did not pay Samuel this $8,836.37 when he purchased the land from Samuel. *41 It has also been stipulated that: "On November 6, 1950, the Boardwalk National Bank, * * * loaned the sum of $10,000.00 which loan was evidenced by a Note for said amount, made by Samuel Singer and endorsed by Leroy B. Williams, petitioner herein, and Laura Singer, who was the wife of Samuel Singer." It is also stipulated "that on November 6, 1950 Samuel Singer received $10,000 less discount applicable. thereto for said note dated November 6, 1950." It is petitioner's contention that although the $10,000 was borrowed in Samuel's name, nevertheless the loan was really that of petitioner and that the money went to pay Samuel for 34-36 North Kentucky Avenue which petitioner purchased from Samuel for $8,750 on February 16, 1950, plus settlement charges. Furthermore, it is petitioner's contention that the $3,000 which was paid The Bank during 1951 was paid to Samuel by petitioner in cash and Samuel, in turn, made the payments to The Bank. Therefore petitioner contends that in the net worth statement there should be listed a liability of petitioner of $10,000 on December 31, 1950, primarily to Samuel and contingently to The Bank, and there should be listed a liability of $7,000 of *42 petitioner on December 31, 1950, on account of this same note, $3,000 being paid thereon by petitioner during the year 1951. We think the evidence sustains petitioner that early in the year 1950 he purchased from Samuel 34-36 North Kentucky Avenue for a consideration of $8,750 in addition to one-half of the settlement costs amounting to $86.37. Petitioner did not pay Samuel this purchase price. It was paid out of the proceeds of a loan which The Bank made to Samuel November 6, 1950. So far as The Bank was concerned Samuel was the obligor on this note and petitioner was only endorser on it. However, he was indebted to Samuel in the amount of $8,836.37. In 1951, petitioner actually paid Samuel $3,000 on this indebtedness and Samuel paid the amount to The Bank. In these circumstances there should be included in the net worth statement of petitioner, December 31, 1950, as a liability $8,836.37 due Samuel. Inasmuch as petitioner paid Samuel $3,000 on this indebtedness in 1951, which Samuel in turn paid to The Bank, there should be included as a liability of petitioner to Samuel, in the net worth statement as of December 31, 1951, the amount of $5,836.37. As has been noted heretofore *43 it is petitioner's claim that his primary indebtedness to Samuel as of December 31, 1950, should be included as a liability of $10,000, and as a liability of $7,000 as of December 31, 1951. However, petitioner's contention as to the above amounts is not sustained. It is true that petitioner was contingently liable to The Bank in these respective amounts on the respective dates, but he was only primarily liable to Samuel in the amounts we have already stated. The evidence does show that after the death of Samuel which occurred in 1952, petitioner's contingent liability as endorser on the note became a primary liability of petitioner to The Bank and he was liable to pay, and did pay, the remainder due on the note. However, it is the years 1950 and 1951 which we have before us and petitioner's primary liability to Samuel was in the amounts which we have stated. His contingent liability to The Bank should not be included as a liability in the net worth statements. To the extent we have stated petitioner is sustained in this contention. Depreciation Issue Petitioner claimed the following depreciation deductions in his returns: Item
1950
1951
Brick Bldg. - 1623 1/2 Arctic
Ave.
$ 600.00
$ 600.00
Brick Bldg. - 30-32 N. Ken-
tucky Ave.
400.00
400.00
Others - (separately listed
in
the returns)
1,129.34
1,341.88
$2,129.34
$2,341.88
*44 Respondent did not change these deductions in his deficiency notice. In an amended answer, however, respondent contends that no depreciation deductions are allowable in either year on 1623 1/2 Arctic Avenue and that depreciation deductions of only $15.58 for each year are allowable on 30-32 North Kentucky Avenue. Respondent does not challenge the other depreciation deductions which petitioner took on his return having to do with furniture and fixtures, improvements, etc. He leaves these undisturbed. The only part of depreciation which he challenges in his amended answer is that which relates to petitioner's buildings. Respondent's contention is correct. In essence, he maintains that the original costs of the buildings are overstated in the returns and that (1) the accumulated depreciation allowed in prior years on 1623 1/2 Arctic Avenue exceeds the correct original cost thereof so that no basis remains to be depreciated; (2) the accumulated depreciation allowed in prior years on 30-32 North Kentucky Avenue is only $529.85 less than the correct original cost thereof which, when spread over the remaining life of that building, results in yearly depreciation deductions of $15.58. Petitioner's *45 briefs, it is here noted, do not mention these issues. Presumably petitioner concedes the correctness of respondent's allegations as to depreciation contained in his amended answer. Only two principles of tax law need be adverted to in considering this question: (1) the depreciation deduction does not apply to land, but only to the improvements thereon; and (2) the basis for depreciation of the buildings in this case are their original costs to petitioner, less the aggregate amounts allowed for depreciation deductions in prior years (but not less than the amounts allowable therefor). Sections 23(n), 114(a), 113 (a), (b)(1), of the 1939 Code. It is clear that the depreciation deductions claimed by petitioner on his returns were excessive. The cost basis of the buildings were substantially overstated. In the stipulation of facts the cost of the respective properties was stipulated and an agreed allocation by the parties of a part of that cost was made to the buildings on the land. The petitioner in his computation of depreciation shown as a deduction on his returns had used a much higher figure for calculating depreciation on the buildings than has now been allocated to them in the *46 stipulation of facts. The Commissioner in his computation of depreciation used in his amended answer asking for an increased deficiency has used as a basis for his computation the stipulated values of the buildings. That, of course, is manifestly proper. The petitioner evidently agrees to this because he does not discuss it in his brief. The following tables sum up the facts showing the claims made in petitioner's returns, respondent's computations, and the source of the facts upon which respondent relies: 1623 1/2 Arctic Avenue
Depreciation
Remaining
Estimated
Depre-
Date
Cost
Allowed in
Cost to Be
Remaining
ciation
Acquired
Basis
Prior Years
Recovered
Life
Deduction
Petitioner's
1929
$20,000.00
$12,000
$ 8,000.00
13 yrs.
$600.00
1950 return
Resp's.
1927
8,734.88
12,000
13 yrs.
correct
findings
Source of
Stip.
Stip.
Return
Return
Resp's.
findings
Petitioner's 1951 return is as above except that it shows $12,600 as depreciation allowed in prior years, $7,400 as remaining cost to be recovered, and estimated remaining life as 12 1/3 years. 30-32 North Kentucky Avenue
Depreciation
Remaining
Estimated
Depre-
Date
Cost
Allowed in
Cost to Be
Remaining
ciation
Acquired
Basis
Prior Years
Recovered
Life
Deduction
Petitioner's
1932
$20,000.00
$7,000
$13,000.00
34 yrs.
$400.00
1950 return
Resp's.
1930
7,529.85
7,000
529.85
34 yrs.
15.58
correct
findings
Source of
Stip.
Stip.
Return
Return
Resp's.
findings
*47 Inview of what we have said we hold that respondent's depreciation schedule attached to his amended answer is correct and should be used in a computation under Rule 50. Fraud Penalties As was stated in our preliminary statement, the Commissioner has determined fraud peanlties against petitioner for each of the taxable years. In our Findings of Fact we made a finding that no part of the deficiency for 1950 is due to fraud with intent to evade the tax. This finding is principally based on our holding that in addition to the assets which petitioner owned on December 31, 1949, as computed in respondent's net worth statement, he owned an account receivable of $14,898.47 against Club Harlem. The failure of the Commissioner to give petitioner credit for this asset in his net worth computation for December 31, 1949, results in a very substantial understatement of his assets for the beginning period and accounts in large part for the alleged omitted income for 1950 which respondent determined in his deficiency notice. Also at the end of the year 1950, respondent failed to include as a liability of petitioner $8,836.37 due to Samuel Singer for real estate which petitioner had purchased *48 from him in February 1950. Notwithstanding these adjustments in petitioner's favor to the net worth statement used by respondent, there may still be a deficiency for 1950 due to adjustment for depreciation as asked for in respondent's amended answer and to other adjustments. These other adjustments, however, we do not think have been shown to be due to fraud with intent to evade tax. We hold in petitioner's favor as to the imposition of fraud penalties for 1950. However, for 1951, we have made a finding that part of the deficiency for that year is due to fraud with intent to evade tax. The evidence shows that Club Harlem paid to petitioner in 1951 $14,693.97 over and above the $1,806.03 which was required to pay to petitioner the balance of the $14,898.47 which Club Harlem owed to petitioner December 31, 1949. Petitioner returned none of the $14,693.97 above mentioned as income which was paid to him in 1951 by Club Harlem. His claim was and still is that this money was loaned to him by Club Harlem and that it should be included as a liability of his in the net worth statement as of December 31, 1951. However, the evidence convinces us that this statement is not true. Petitioner executed *49 no note or other written evidence showing that he owed Club Harlem this amount. No books or other records of Club Harlem were introduced showing that Club Harlem carried these amounts as an account receivable on its books against petitioner. We are convinced that these payments aggregating $14,693.97 paid to petitioner in 1951 by Club Harlem from time to time were income to him and were fraudulently omitted from his return with intent to evade tax. Petitioner lays much stress in his brief on the fact that on September 8, 1954, he deeded his properties 30-32 North Kentucky Avenue and 37 Surf Place to Club Harlem to satisfy the corporation or club for all moneys it had advanced him in 1951, to the date of the conveyance, and subject to his Federal tax liens which were to be paid by the Club Harlem. However, we are not impressed by this conveyance by petitioner. It seems to us more of an afterthought than anything else. It was done after petitioner had been indicted, tried and convicted in the United States District Court for the District of New Jersey on two counts involving the taxable years 1950 and 1951 for violation of section 145(b) of the 1939 Code and while the deficiencies *50 and penalties here involved were still pending. After very careful consideration of all the evidence, we have made our finding of fact that part of the deficiency for 1951 is due to fraud with intent to evade tax. This, therefore, results in our sustaining the Commissioner's determination of fraud penalties for 1951. They will, of course, be recomputed under Rule 50 to accord with the deficiencies determined. Section 294(d)(1)(A) and 294(d)(2) Penalties Petitioner was required to file declarations of estimated tax for 1950 and 1951 but failed, without reasonable cause, to do so. Petitioner is, therefore, liable for the estimated tax penalties prescribed under section 294(d)(1)(A) and 294(d)(2) of the 1939 Code. Harry Hartley, 23 T.C. 353; G. E. Fuller, 20 T.C. 308. Petitioner contends that the penalty under section 294(d)(2) relating to underestimation of taxes cannot be imposed because petitioner did not in fact file any estimated tax at all. On that point petitioner, in his reply brief, says: "petitioner calls attention to the Court's decision in the case of U.S. v. Ridley et al., 120 Fed. Supp. 538 [530], * * * in which it held that where no *51 estimate was filed by the taxpayer there could not be levied against him the 6% penalty under Section 294 Internal Revenue Code in view of the fact that the government could avail itself of the 10% penalty but not both. * * *" In the case of G. E. Fuller, supra, this same point was raised and we specifically held against the taxpayer's contention. We held that both the penalties under section 294(d)(1)(A) and section 294(d)(2) had been correctly imposed by the Commissioner. Following our decision in that case, the Commissioner's determination as to these penalties is sustained. The determination of the amounts, however, will be recomputed under Rule 50 to accord with petitioner's taxable income under Rule 50. Decision will be entered under Rule 50.