Marvin T. Blackwell, et al. [1] v. Commissioner. Blackwell v. Commissioner
Docket Nos. 52701, 52702, 53880, 59625-59627.
United States Tax Court
T.C. Memo 1956-184; 1956 Tax Ct. Memo LEXIS 108; 15 T.C.M. (CCH) 962; T.C.M. (RIA) 56184; August 9, 1956
*108 Issues relating to O. K. Loan Company of Troy, Inc.: 1. Held, certain alleged interest added by the Commissioner to the income reported by petitioner on its returns for the fiscal years 1948 through 1952 was erroneously added. As to these adjustments the Commissioner is reversed. 2. Held, an amount of $3,478.80 added by the Commissioner as "deferred interest" to the income reported by petitioner in its return for the fiscal year 1948 was erroneously added. As to this adjustment the Commissioner is reversed. 3. Held, a payment of $1,407.06 made by petitioner in 1948 to its president, M. T. Blackwell, was a bona fide salary payment to Blackwell for services actually rendered by Blackwell to petitioner in its fiscal year 1948. The Commissioner erred in refusing to allow petitioner this deduction as a business expense. 4. Held, as to certain automobile expenses claimed by petitioner as business expenses for its fiscal years 1948, 1950, 1951, and 1952, and disallowed in part by the Commissioner, the Commissioner is sustained as to his disallowance for the fiscal year 1948. He is reversed in part as to his disallowances for the fiscal years 1950, 1951, and 1952. 5. Held, the *109 Commissioner's disallowances of depreciation claimed on petitioner's returns for the fiscal years 1948 through 1952 are sustained in part and reversed in part. 6. Held, the Commissioner is sustained in part in his disallowance to petitioner as deductions of certain insurance premiums claimed on its returns as deductions for its fiscal years 1951 and 1952. He is reversed as to certain portions of these deductions disallowed. 7. Held, the Commissioner is sustained in his disallowance of falsely claimed rent allegedly paid by petitioner for one of its branch offices. The rent disallowed was not paid. 8. Held, the Commissioner erred in disallowing as deductions certain business expenses incurred and paid by petitioner in its taxable years 1948 through 1952. He is sustained in his disallowance of two comparatively small portions of the deductions claimed. 9. Held, the Commissioner is sustained in his adding to the income reported by petitioner on its income tax returns for its fiscal years 1948 through 1952 of certain amounts of so-called "pulled interest" in each of the taxable years. This interest was collected by petitioner from borrowers and very soon thereafter paid over to *110 petitioner's president, Marvin T. Blackwell, for his own use. Petitioner made false entries in its records with respect to this "pulled interest" and did not return any of it for taxation on its returns for the respective taxable years. 10. Held, part of the deficiency in petitioner's tax for each of its fiscal years 1948 through 1952 is due to fraud with intent to evade the tax. The Commissioner's imposition of fraud penalties for each of the taxable years is sustained. Issues as to Marvin T. Blackwell and Clarice Blackwell: A. Held, a check of $1,407.06 paid Blackwell in January 1948 by his corporate employer was salary to him and taxable as such. It was not part of the consideration received by Blackwell for his conveyance of assets to the corporation in April of 1947. B. Held, the Commissioner erred in computing a capital gain of $205.51 to Blackwell on the sale of the assets of his loan business to the corporation in April 1947. There was a loss to Blackwell in the sale of these assets, instead of a capital gain. C. Held, the Commissioner erred in adding to Blackwell's income for 1949, $900 which he determined was paid to Blackwell for his personal use. It was not for *111 Blackwell's personal use nor was it so used by him. It was deposited by Blackwell in one of the banks for use by one of the branch loan offices and was so used by it. D. Held, the Commissioner is sustained in his action in adding to Blackwell's income for 1948, as a distribution to him of a corporate dividend, $393.36 representing the residual value of an automobile which Blackwell received from the corporation and sold to O. D. Cantwell. E. Held, the Commissioner erred in adding to the income reported by Blackwell on his returns, $3,600 which represented the purchase price of automobile trucks and an automobile which the corporation purchased for its own use and not for Blackwell's use. These motor vehicles were owned by the corporation and not by Blackwell and their purchase price should not be taxed to him. F. Held, that the action of the Commissioner in adding to Blackwell's income for 1949, 1950, and 1951 certain automobile expenses claimed as business deductions by the corporation and disallowed by the Commissioner is sustained in part and reversed in part. The amounts sustained represent amounts which petitioner concedes should be taxed to him because the expenses were *112 incurred for his personal benefit. G. Held, certain insurance premiums incurred and paid in 1951 by the corporation in insuring a Pontiac automobile and disallowed as a deduction to the corporation and added as income to Blackwell are sustained in part and reversed in part. The automobile was owned by the corporation but was used by Blackwell for his personal use 25 per cent of the time. He concedes that 25 per cent of the insurance premium should be taxed to him. H. Held, the corporation falsely claimed deduction for 17 months' rent at $20 per month for 5 months in 1950 and 12 months in 1951. The $340 falsely claimed by the corporation as rent paid was not rent but was paid over to Blackwell for his own personal use. The Commissioner is sustained in taxing the $340 to Blackwell. I. Held, the Commissioner erred in taxing as income to Blackwell in the calendar years 1948, 1949, 1950, and 1951, certain business expenses which the corporation incurred and paid in those years in its own behalf and which the Commissioner disallowed as deductions to the corporation. Held, further, the Commissioner did not err in adding to Blackwell's income two small items of $3.55 and $9, respectively. *113 Petitioner has not shown that these two items were not expended for his personal benefit. J. Held, amounts of so-called "pulled interest" received by Blackwell in 1947, 1948, 1949, 1950, and 1951, from the corporation and deposited in his own personal bank account and used by him as his own personal funds were taxable income to him. The Commissioner's action in adding these amounts to Blackwell's taxable income is approved. The amounts of the so-called pulled interest for each of the taxable years is not in dispute. Commissioner v. Wilcox, 327 U.S. 404, upon which petitioner relies, is distinguished. K. Held, the Commissioner erred in disallowing credit for dependents to Blackwell in the taxable years 1947, 1948, 1949, 1950, and 1951. Blackwell's stepmother and his aunt were both over 70 years of age during the taxable years and Blackwell furnished in excess of 50 per cent of their support and neither had income in excess of $500 in any of the taxable years. L. Held, part of the deficiencies in each of the taxable years is due to fraud with intent to evade tax. The Commissioner's imposition of fraud penalties in each of the taxable years is sustained. M. Petitioner *114 did not file estimated tax returns for any of the taxable years although in each of the years his income was in excess of the minimum which would have exempted him from filing an estimated tax return. Held, the Commissioner is sustained in his imposition of penalties under section 294(d)(1)(A) of the 1939 Code. Such penalties will be recomputed under Rule 50. N. Held, petitioner is liable for penalties for underestimating the tax in each of the taxable years under section 294(d)(2) of the 1939 Code, although he did not file a return of estimated tax. The penalties will be recomputed under Rule 50. G. E. Fuller, 20 T.C. 308, followed. Fred S. Ball, Jr., Esq., First National Bank Building, Montgomery, Ala., for the petitioners. Homer F. Benson, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion BLACK, Judge: Docket Nos. 53880 and 59627 involve deficiencies in income tax and penalties which the Commissioner has determined against O. K. Loan Company of Troy, Inc. These deficiencies and penalties are as follows: Sec. 293(b)
I.R.C. 1939
Year Ended
Income Tax
Penalty
4-30-48
$1,308.27
$ 654.14
4-30-49
2,508.42
1,254.21
4-30-50
5,767.77
2,883.89
4-30-51
8,185.25
4,092.63
4-30-52
8,139.32
4,069.66
Docket Nos. 52701 and 59625 involve deficiencies in income tax and penalties which the Commissioner has determined against Marvin T. Blackwell as follows: Sec. 293(b) § 294(d)(1)(A) § 294(d)(2)
I.R.C. 1939
I.R.C. 1939
I.R.C. 1939
Year Ended
Income Tax
Penalty
Penalty
Penalty
12-31-47
$2,597.59
$1,298.80
$363.24
$217.95
12-31-48
1,844.11
922.06
182.92
109.75
12-31-49
4,519.53
2,259.77
452.12
271.28
Docket Nos. 52702 and 59626 involve deficiencies *116 in income tax and penalties which the Commissioner has determined against Marvin T. Blackwell and Clarice Blackwell as follows: Sec. 293(b) § 294(d)(1)(A) § 294(d)(2)
I.R.C. 1939
I.R.C. 1939
I.R.C. 1939
Year Ended
Income Tax
Penalty
Penalty
Penalty
12-31-50
$5,390.14
$2,695.07
$537.72
$322.63
12-31-51
5,390.30
2,695.15
538.64
323.18
These proceedings were consolidated for hearing. The petitions raise numerous assignments of error to the determinations of the Commissioner. Some of the adjustments made by the Commissioner in his determination of the deficiencies are not contested. We think it would expedite the orderly disposition of the numerous assignments of error raised in the petitions to take up first the assignments of error as to the deficiencies determined against petitioner O. K. Loan Company of Troy, Inc., and then take up the assignments of error in the petitions of Marvin T. Blackwell and his wife, Clarice Blackwell. We also think it would expedite a disposition of these proceedings and, on account of the large number of issues, avoid confusion, to take up the issues separately, make findings of fact with respect *117 to them and then state our ruling in an opinion, making it as brief as possible. This we shall endeavor to do. O. K. Loan Company of Troy, Inc. General Findings In April 1946, Marvin T. Blackwell (sometimes hereafter referred to as Blackwell) began a small loan business in Troy, Alabama, and in September 1946, he opened an office in Ozark, Alabama. The loan business was conducted by Blackwell as an individual proprietorship until April 25, 1947. O. K. Loan Company of Troy, Inc. (sometimes hereafter referred to as the corporation) was incorporated on April 7, 1947, under the laws of the State of Alabama for the purpose of acquiring and operating the small loan business previously operated in Troy and Ozark as a proprietorship by Blackwell. The principal office of O. K. Loan Company was in Troy, Alabama. On April 25, 1947, Blackwell transferred the assets of the small loan proprietorship business to the corporation for certain considerations which will be hereinafter enumerated under one of the issues raised in the case. The capital stock of O. K. Loan Company of Troy, Inc., issued and outstanding from the date of its organization and throughout the taxable years involved *118 consisted of 20 shares of common stock of $100 par value. Eleven of the 20 shares of capital stock of the corporation were issued in the name of Marvin T. Blackwell, 4 shares were issued in the name of his stepmother, Mary Blackwell, 4 shares were issued in the name of his aunt, Della Blackwell, and 1 share was issued in the name of O. D. Cantwell. Cantwell did not pay anything for the 1 share of stock issued to him. No consideration was given for the 4 shares of stock issued in the name of Mary Blackwell nor the 4 shares issued in the name of Della Blackwell. Shortly after the marriage of Marvin T. Blackwell and Clarice Blackwell on May 1, 1952, Mary and Della Blackwell's shares of O. K. Loan Company stock were transferred to Clarice on the corporate stock book. So far as the record shows, no consideration was paid by Clarice for the transfer of these shares. During the taxable years April 30, 1948 through April 30, 1952, there were three directors of the corporation, namely, Marvin T. Blackwell, Mary Blackwell, and O. D. Cantwell. During the taxable years Marvin T. Blackwell served as president, Mary Blackwell as vice president, and O. D. Cantwell as secretary-treasurer. Blackwell *119 and Cantwell have served in their respective official capacities since the corporation was organized. Neither Mary Blackwell nor Della Blackwell ever performed services or had any part in the affairs of the corporation. On January 1, 1949, the corporation opened an office in Opp, Alabama, and in November 1950, it opened an office in Luverne, Alabama. The four loan offices were operated by the corporation under the supervision of Blackwell and Cantwell. The corporation, a cash receipts and disbursements taxpayer, filed its United States corporation income tax returns for the fiscal years ended April 30, 1948 through April 30, 1952, with the then collector of internal revenue for the district of Alabama, Birmingham, Alabama. The corporation kept no double entry set of books. It had certain records which it kept that amounted to a single entry set of books. Among these records which the corporation kept was a small book, referred to as a counter book, individual loan cards for each customer which showed the amount loaned and collections thereon, and certain daily reports designated daily balance sheets. Issue 1 Additional interest determined by the Commissioner for the 5 *120 fiscal years ending April 30, 1948 through April 30, 1952, total for all 5 years, $8,806.12. The Commissioner determined that the corporation received interest which it had not reported in its returns, as follows: Fiscal Year Ended
Amount
4-30-48
$ 518.99
4-30-49
3,774.50
4-30-50
1,697.70
4-30-51
1,493.58
4-30-52
1,321.35
Findings of Fact The Commissioner made these additions to the interest reported on the corporation's returns on the basis of a revenue agent's report in which the agent used a percentage method of determining what amount of the collections made by the corporation in each fiscal year was a collection of principal and what amount was a collection of interest or fees. The agent assumed in his computations that the ratio of principal collected to interest collected was 84.39 and thus concluded that the rest of the collections was interest. The petitioner correctly recorded on its records, with the exception of the so-called "pulled interest" which will be hereinafter discussed under another issue, the interest or fees which it collected in each of its fiscal years here involved. It correctly reported its interest or fees collected in each *121 of its fiscal years, with the exception of the so-called pulled interest which will be hereinafter discussed under another issue and which has nothing to do with the interest involved in this Issue 1. Opinion It is conceded that petitioner corporation kept its books and records on the cash basis and its returns were filed on the cash basis. Its method of recording the collection of principal and interest in its small loan business was to apply the first money collected to principal until the entire amount of principal was collected and then apply further collections to interest. This was the same method as was used by the taxpayers in Ishmael S. O'Dell, 26 T.C. - (June 20, 1956). We approved the method in that case as one which correctly reflected the income of the taxpayer on the cash basis and held that the Commissioner was without authority to use the percentage basis. In the instant case, the evidence convinces us that the corporation carefully kept records of all interest collected with the exception of the so-called pulled interest to be hereinafter discussed. We are also convinced that petitioner correctly reported on its returns for each of the taxable years the amounts *122 of its interest collected with the exception of the so-called pulled interest. We hold that the percentage method used by the Commissioner in his determination of the deficiencies was error. Issue 1 is decided in petitioner's favor. Issue 2 Did O. K. Loan Company erroneously fail to report deferred interest income in the amount of $3,478.80 on receivables purchased from Marvin T. Blackwell on April 25, 1947, as part of the assets of the proprietorship loan business? Respondent in his brief states as follows: "This item of interest was included by respondent in the taxable income of O. K. Loan Company for the fiscal year ended April 30, 1948 and it was also included in a like amount in the taxable income of Marvin T. Blackwell for the calendar year 1947. Respondent concedes this issue with respect to O. K. Loan Company. Marvin T. Blackwell does not contest this issue." In view of the foregoing concession by respondent in his brief, this issue as to $3,478.80 deferred interest, which was raised by the pleadings, is decided in favor of petitioner corporation. There is no need to make Findings of Fact or write an Opinion with reference to this issue. Issue 3 Disallowed *123 salary expense to corporation in amount of $1,407.06 for fiscal year ended April 30, 1948. The Commissioner, in his determination of the deficiency against the corporation for the fiscal year 1948, added to the net income reported by the corporation on its return, $1,407.06. This adjustment is explained in the deficiency notices as follows: (c) It is held that the payment during taxable years of the personal obligation of Mr. M. T. Blackwell, your president, for Federal income tax liability in the amount of $1,407.06, which you had assumed as part of the purchase price, of the predecessor proprietorship business, is not deductible as salary expense, and it is further held that this amount was erroneously charged to the expense account. Accordingly, the amount of $1,407.06 is restored to income." Petitioner by an appropriate assignment of error contests the correctness of this adjustment. Findings of Fact On January 9, 1948, petitioner corporation paid to M. T. Blackwell a check for $1,407.06. This check is in evidence as part of the record in this case. It was paid to Blackwell to cover his entire salary from the time petitioner was incorporated in April 1947, and took over *124 the small loan business theretofore operated by Blackwell as a sole proprietorship, to the end of the fiscal year 1948. It was a bona fide salary paid Blackwell for his services rendered to the corporation and was not, as the Commissioner has determined, a voluntary assumption and payment by the corporation of the income tax obligations of Blackwell. Opinion This issue is one of fact. The Commissioner does not deny that the $1,407.06 is deductible by the corporation as a business expense, if it was in fact paid to Blackwell as salary for his services rendered the corporation. Respondent, however, denies that it was salary paid Blackwell. The evidence convinces us that it was salary paid Blackwell for services rendered. The evidence is uncontradicted that from the date the corporation took over the small loan business from Blackwell in April 1947, Blackwell was manager of the business and its directing head. No other salary was paid him for the fiscal year ended April 30, 1948, except this $1,407.06 which was paid him shortly after the first of the year. This check is in evidence as one of the exhibits in the case. It was endorsed and cashed by Blackwell. Although Blackwell does *125 not return this $1,407.06 as salary on his income tax return for 1948, he now concedes that he should have done so and that in this proceeding the $1,407.06 should be added to his income for 1948. Issue 3 is decided in petitioner's favor. Issue 4 Disallowed automobile expenses of the corporation. In the deficiency notice the Commissioner disallowed for the fiscal year 1948, automobile expenses in the amount of $435.05. He explained this adjustment as follows: "(b) It is held that automobile expense claimed at your Troy, Alabama, office was overstated in the amount of $435.05, inasmuch as you erroneously charged to the expense account the personal obligations of Mr. M. T. Blackwell, your president, which you had assumed as part of the purchase price of his single proprietorship, when payment of the obligations in the amount of $435.05 was made during the taxable year." The Commissioner, in his determination of the deficiency for the fiscal year 1950, disallowed as a deduction automobile expense, $1,456.56. This adjustment was explained in the deficiency notice as follows: "(b) It is held that automobile expense claimed on your return for the taxable year was overstated *126 in the amount of $1,456.56, as shown as follows: "Claimed
Increase
on
in
Return
Corrected
Income
"Troy, Alabama
office
$2,720.65
$1,272.01
$1,448.64
Ozark, Alabama
office
738.50
730.58
7.92
Totals
$3,459.15
$2,002.59
$1,456.56
"(1) It is held that you did not consider a reimbursement by insurance for an automobile accident in the amount of $669.54 received on January 14, 1950. This amount is restored to income. "It is held that the expenses claimed for the last five (5) months of taxable year included the personal expense of your president, Mr. M. T. Blackwell, and that fifty per cent (50%) of the expense was for his personal benefit. The total expense for this five (5) month period was $2,227.74 less $669.54 insurance proceeds, or a net of $1,558.20. Accordingly, 50% thereof, or $779.10 is disallowed. "(2) It is held that as a result of a transposition in carrying expenses forward from work papers to the return, automobile expenses at your Ozark, Alabama office were overstated by $7.92." The Commissioner, in his determination of the deficiency for the fiscal year 1951, disallowed deduction of automobile expenses amounting *127 to $2,133.64. This adjustment was explained in the deficiency notice as follows: "(c) It is held that auto expense claimed on your return for the taxable year was overstated in the amount of $2,133.64." The Commissioner, in his determination of the deficiency for the fiscal year 1952, disallowed deduction of automobile expenses amounting to $2,384.03. This adjustment is explained in the deficiency notice as follows: "(c) It is determined that you are entitled to a deduction for automobile expense only in the amount of $2,114.13, and inasmuch as you deducted $4,498.16, the difference of $2,384.03, as shown below is restored to income: "Claimed
Increase
on
in
Return
Corrected
Income
"Troy, Alabama
office
$2,167.47
$1,018.71
$1,148.76
Ozark, Alabama
office
802.34
377.10
425.24
Opp, Alabama
office
909.84
427.62
482.22
Luverne, Alabama
office
618.51
290.70
327.81
Totals
$4,498.16
$2,114.13
$2,384.03
"(1) Fifty-three per cent (53%) of the automobile expense claimed is held to be personal expense of your president, Mr. M. T. Blackwell." Petitioner by appropriate assignments of error contests the correctness of the foregoing *128 adjustments made by the Commissioner for the fiscal years 1948, 1950, 1951, and 1952. Findings of Fact The corporation had offices in several cities and collectors who operated their own cars. The gas, oil, and repairs were paid for by the corporation. Petitioner's trucks were used to haul in repossessions of security in petitioner's small loan business and for other corporate purposes. Blackwell did use the automobiles owned by the corporation to some extent for his own personal use. A reasonable allocation of automobile expenditures which should be allocable to the personal use of Blackwell is as follows: Fiscal year 1950
$ 320.86
Fiscal year 1951
724.95
Fiscal year 1952
710.62
Total automobile expense chargeable
to M. T. Blackwell's personal use
(Calendar years 1950, 1951, and 1952)
$1,756.43 The balance of the automobile expenses disallowed by the Commissioner for the taxable years 1950, 1951, and 1952, are deductible expenses by the corporation and not income to Blackwell. Opinion Manifestly, the issue here is one of fact. The Commissioner concedes that in each of the taxable years petitioner had deductible automobile expenses and he has allowed *129 a portion of such expenses in his determination of the deficiencies, but he has disallowed other portions of the automobile expenses claimed on the ground that the expenses disallowed were incurred for the personal use of Blackwell, petitioner's president. In some years the Commissioner has disallowed 50 per cent of petitioner's claimed automobile expenses on the ground they were incurred for personal use of Blackwell. In another year he disallowed 53 per cent of claimed automobile expenses on the ground of personal use by Blackwell. We are convinced from the evidence that the disallowance of the Commissioner for the fiscal years 1950, 1951, and 1952 is erroneous in part. We have made findings as to the amounts of automobile expenses which should be attributed to the personal use of Blackwell in his taxable years 1950, 1951, and 1952. These amounts are conceded by petitioner corporation and by Blackwell. The amount of the Commissioner's disallowance in each of these taxable years is sustained to the extent of the amounts we have found attributable to Blackwell's personal use. His disallowance in the three fiscal years 1950, 1951, and 1952, is reversed except to the extent just named. *130 So far as we have been able to ascertain, no issue is raised by the pleadings as to automobile expenses for the fiscal year 1949. As to the fiscal year 1948, as pointed out under this Issue 4, the Commissioner disallowed $435.05 of the automobile expenses claimed by petitioner on its return and petitioner assigned this action of the Commissioner as error. We find no evidence in the record which sustains this assignment of error and apparently petitioner no longer claims it. Therefore, the determination of the Commissioner that $435.05 of the automobile expenses claimed by petitioner on its return for 1948 should be disallowed, is sustained. Issue 5. Disallowance by the Commissioner of portions of the deductions by petitioner of depreciation for fiscal years 1948 through 1952. In the Commissioner's determination of the deficiency for the fiscal year 1948, the Commissioner disallowed depreciation claimed by petitioner on its return of $446.87. This adjustment is explained in the deficiency notice, as follows: "(d) It is determined that you are entitled to a deduction for depreciation at the Troy, Alabama office only in amount of $106.82, and inasmuch as you deducted $553.69, *131 the difference of $446.87 is restored to income." In his determination of the deficiency for the fiscal year 1949, the Commissioner disallowed "Excessive depreciation $11.61." In his determination of the deficiency for the fiscal year 1950, the Commissioner disallowed "Excessive depreciation $95.53." In his determination of the deficiency for the fiscal year 1951, the Commissioner disallowed "Excessive depreciation $315.08." In his determination of the deficiency for the fiscal year 1952, the Commissioner disallowed "Excessive depreciation $944.47." This adjustment is explained in the deficiency notice, as follows: "(f) It is determined that you are entitled to a deduction for depreciation only in the amount of $1,531.23, and inasmuch as you deducted $2,475.70, the difference of $944.47, as shown below, is restored to income. "Claimed
Increase
on Return
Corrected
in Income
"Troy, Alabama office
$1,608.44
$1,330.04
$278.40
Ozark, Alabama office
761.70
97.39
664.31
Opp, Alabama office
102.22
100.46
1.76
Luverne, Alabama office
3.34
3.34
Totals
$2,475.70
$1,531.23
$944.47"
The petitioner assigned error as to each of the foregoing *132 adjustments which respondent made to the depreciation claimed by petitioner on its returns for the respective taxable years. Findings of Fact There is no evidence which we regard as sufficient to overcome the presumptive correctness of the determination of the Commissioner in disallowing certain depreciation claimed by petitioner on its returns for the fiscal years 1948, 1949, and 1950. The Commissioner's disallowance of depreciation for the years 1951 and 1952 was based on his determination that a Ford truck, a Studebaker truck and a Pontiac automobile were not the property of petitioner corporation, but were owned by its president, Blackwell. This determination of the Commissioner was in error. These motor vehicles were owned by petitioner corporation and it was entitled to take depreciation thereon in 1951 and 1952. Opinion The parties are not in dispute concerning the law which governs the allowance to a taxpayer for depreciation. The controversy is one of fact. The evidence in the record concerning the depreciation items which are in dispute is far from satisfactory. We shall have to do the best we can in dealing with a very unsatisfactory record as affecting proper depreciation *133 allowances to petitioner corporation. Of course, it requires no citation of authorities to support the proposition that the Commissioner's disallowance in each of the taxable years of part of the depreciation claimed is presumed to be correct. We do not think the evidence in the record justifies a disapproval of the Commissioner's disallowances of depreciation for the fiscal years 1948, 1949, and 1950. Therefore, petitioner's assignments of error contesting the Commissioner's disallowances of $446.87, $11.61, and $95.53, for the above respective taxable years, are overruled. The Commissioner's determination for those years is sustained. The situation is somewhat different as to the taxable years 1951 and 1952. In those two taxable years the Commissioner's disallowance is based upon his determination that a 1951 Pontiac, a 1939 Ford truck, and a 1948 Studebaker truck were not owned by petitioner corporation but that these automobiles were the personal property of Blackwell and, therefore, no allowances for depreciation should be made to petitioner on these three autos. There is no other difference, so far as we are able to ascertain, between the parties as to depreciation for these *134 two taxable years, 1951 and 1952. The weight of the evidence is to the effect that the Ford truck, the Studebaker truck, and the 1951 Pontiac were purchased and paid for by petitioner corporation and were owned by it. All three cars were used in petitioner's business. It is true that the evidence shows that the 1951 Pontiac was used to some extent by Blackwell for his personal use. The trucks were not so used. Inasmuch as all three cars were owned by the petitioner corporation in the taxable years 1951 and 1952, we think it is entitled to take depreciation thereon. There is no controversy as to the cost to be used and the rate of depreciation to be used. As to the Commissioner's disallowances of depreciation for the taxable years 1951 and 1952, he is reversed. Issue 6. Insurance on Pontiac Automobiles. The Commissioner, in his determination of the deficiency for the year 1951, disallowed as a deduction insurance in the amount of $235.64. He explained this adjustment in his deficiency notice, as follows: "(e) It is held that you are entitled to a deduction for insurance paid at your Troy, Alabama, office for the taxable year of $367.50, and inasmuch as you deducted the *135 amount of $603.14, the difference of $235.64 is restored to income." The Commissioner, in his determination of the deficiency for the fiscal year 1952, disallowed $204.45 of the claimed insurance deduction on the taxpayer's return. The Commissioner explains this adjustment in his deficiency notice, as follows: "(e) It is held that the payments made in January 1952 by your Troy, Alabama office for insurance premium in the amount of $132.00 on the Pontiac automobile driven by Mrs. Clarice Blackwell, wife of your president, and for insurance premium in the amount of $72.45 on a personal residence, are personal expenses of Mr. M. T. Blackwell, your president. Accordingly, the amount of $204.45 is restored to income." Petitioner, by appropriate assignments of error, contests the correctness of the Commissioner's disallowance of these insurance premiums for each of the fiscal years 1951 and 1952. Findings of Fact Petitioner corporation incurred and paid insurance premiums on Pontiac automobiles of $134 in January 1951 and $132 in January 1952. These Pontiac automobiles were used to some extent by Marvin T. Blackwell. Petitioner now concedes in its brief that 25 per cent of the *136 respective amounts incurred as insurance on these automobiles in each of the taxable years should be disallowed as a deduction to petitioner and contends that the balance of these insurance premiums on the Pontiac automobiles should be allowed as deductions. Opinion Respondent does not deny that petitioner is entitled in each of the taxable years to a deduction for insurance premiums paid to insure the corporation's property. He has, however, disallowed $235.64 for the year 1951 and $204.45 for the year 1952 as not being properly substantiated. Of the $235.64 disallowed for 1951, we think petitioner has properly substantiated an insurance premium of $134 for insurance on a Pontiac automobile. Petitioner concedes, however, that this should be reduced 25 per cent because of the personal use made of the automobile by Blackwell. Of the $204.45 disallowed for 1952, we think petitioner has properly substantiated $132 as an insurance premium on a Pontiac automobile. Petitioner concedes, however, that this should be reduced 25 per cent because of the personal use made of the automobile by Blackwell. The Commissioner's disallowance of insurance deductions for the respective taxable *137 years is reversed only as to the two insurance premiums on the Pontiac automobile. Petitioner corporation should be allowed deductions for the amount of these insurance premiums except as to the amounts which petitioner corporation and Blackwell concede should be attributed to Blackwell's personal use of the Pontiac. In all other respects the Commissioner's disallowance of insurance premuims in these two respective taxable years is sustained. Issue 7. Amount deductible for rent of the Luverne office for fiscal years 1951 and 1952. The Commissioner, in his determination of the deficiency for the fiscal year 1951, denied petitioner a deduction for rent, $100. This deduction is explained in the deficiency notice, as follows: "(h) It is held that you are entitled to a deduction for rent paid at your Luverne, Alabama, office for the taxable year of $56.22, and inasmuch as you deducted the amount of $156.22, the difference of $100.00 is restored to income." The Commissioner, in his determination of the deficiency for 1952, has disallowed $240 as rent deduction. This adjustment is explained in the deficiency notice, as follows: "(b) It is held that $30.00 each month during taxable *138 year was withdrawn at your Luverne, Alabama office and charged to rental expense, whereas the rent was only $10.00 per month, and the difference of $20.00 per month was retained by Mr. M. T. Blackwell, your president, for his personal use. Accordingly, $240.00 of the expense claimed is disallowed inasmuch as this does not represent an ordinary and necessary business expense." We find no assignment of error in the petition as to respondent's disallowance of $100 rent deduction for 1951. Petitioner did assign error as to respondent's disallowance of rent deduction of $240 for the year 1952. Findings of Fact Petitioner corporation rented quarters for its small loan business at Luverne, Alabama, for 17 months in the fiscal years 1951 and 1952. It incurred and paid $10 per month for the premises which it rented. It falsely claimed a deduction of $30 a month on its income tax returns in the years 1951 and 1952, as rent paid for its Luverne office. The excess of $20 per month was paid over to petitioner's president, Blackwell. Opinion Petitioner concedes in its brief that it paid only $10 per month rent for its Luverne office and that it falsely sought to deduct $30 a month as rent *139 for these premises on its income tax returns for the respective taxable years. The petitioner contends in its brief, however, that the Commissioner's rent adjustments should not be sustained for the following reason: "The respondent determined that rent at Luverne was charged on the books at $30.00 per month when actually the rent was $10.00 a month making an overstatement of rent of $20.00 per month or a total of $340.00. "The evidence shows this to be true but it is without dispute that the $20.00 per month or the total of $340.00 was deposited with the 'pulled interest' fund to Blackwell's credit in Blackwell's account and was already included in the pulled interest figure. Therefore, this is a duplication which was in error and should be eliminated." We have no stipulation in the record that this false $20 per month was included in the pulled interest items which will be discussed later in this report. Mere statements in the brief are not proof of the facts stated therein. If petitioner wanted to prove and could have proved what it states with reference to this rent item, it should have done so at the hearing. It did not do so Respondent's disallowance of these rent items *140 in 1951 and 1952 is sustained. Issue 8 Disallowance of business expenses of petitioner corporation for fiscal years 1948 through 1951 - total $1,090.33. The Commissioner in his determination of the deficiencies for the fiscal years 1948 through 1951 disallowed a total of $1,090.33 claimed by petitioner as ordinary and necessary business expenses on its returns. This total of $1,090.33 is made up of the following: Amounts expended with H. Ligger,
restaurant for 1948, 1949, and 1950,
in entertainment of employees and
business associates
$ 449.14
Amounts expended with Jerry's Grill,
years 1948 and 1949, in entertainment
of employees and business associates
54.99
Florist expenses, years 1948 and 1949
72.92
Christmas expense, 1949 - M. T. Black-
well
300.00
Lunch tickets - M. T. Blackwell
3.55
Office repairs
200.73
Trip to Birmingham - M. T. Blackwell
9.00
Total
$1,090.33
Petitioner, by appropriate assignments of error, contests the Commissioner's action in disallowing these business expenses. Findings of Fact The $449.14 which was paid by petitioner in the years 1948, 1949, and 1950 to H. Ligger restaurant represented expenses incurred *141 by petitioner in the entertainment of employees and customers of petitioner. The amounts paid to Jerry's Grill during the years 1948 and 1949 amounting to $54.99 were for the same purpose as described above. The amount of $72.92 paid to florists in 1949 and 1950 consisted of $25 worth of flowers used at a banquet given to personnel of petitioner on August 31, 1949, at Lake Haven. The other amounts were paid to florists for flowers sent to employees while they were in hospitals or to the funerals of near relatives of some of petitioner's employees. Bills were introduced in evidence which substantiate the amounts claimed as deductions. The amount of $300 paid to M. T. Blackwell January 23, 1949, was paid to him to reimburse him for Christmas presents which he had given to petitioner's employees, Christmas 1948. These Christmas gifts consisted mostly of cash gifts given to the employees as Christmas gifts from petitioner. The $200.73 expended for office repairs during 1949 and 1950 was actually expended for needed repairs and bills were introduced in evidence which substantiated the amount of $200.73 claimed in the respective taxable years. Opinion The provision of the Internal *142 Revenue Code of 1939 which is applicable to this issue is section 23, which reads, in part, as follows: "SEC. 23. DEDUCTIONS FROM GROSS INCOME. "In computing net income there shall be allowed as deductions: "(a) Expenses. - "(1) Trade or Business Expenses. - "(A) In general. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * *" Respondent states this issue in his brief, as follows: "Did respondent properly determine that certain deductions claimed by the O. K. Loan Company for miscellaneous expenses for fiscal years ended April 30, 1948 through April 30, 1951 were paid for the benefit of its major stockholder, Marvin T. Blackwell, and that such expenses are, therefore, nondeductible by the corporation for any of the said years?" The evidence establishes to our satisfaction that with the exception of some small items, which we shall presently mention, *143 the expenditures totaling $1,090.33 were not paid for the benefit of petitioner's principal stockholder, Blackwell. For example, the item of office repairs totaling $200.73 was clearly not made for Blackwell's benefit. They were ordinary repairs incurred in petitioner's business and the receipted bills representing such payments are part of the record in the case. Also the $300 paid for Christmas gifts for Christmas 1948 was not for Blackwell's benefit. These presents were for the most part comparatively small cash gifts which were made to petitioner's employees in recognition of their services. True, they were first paid out of Blackwell's private funds but he was reimbursed for the amount thus expended, January 23, 1949. And so we might go on discussing the other items which make up the total of $1,090.33. Testimony was given about them at the hearing by petitioner's witness, Orville D. Cantwell, and by Dorothy T. Van Cleve, a certified public accountant who prepared Exhibit 5 which was introduced in evidence and which exhibit deals primarily with the matters involved in the petitioner corporation's tax liabilities for the fiscal years 1949 through 1952. There are two items, however, *144 included in the $1,090.33 total concerning which we do not think petitioner has met its burden of proof. One of these items is $3.55 which covers lunches for M. T. Blackwell June 20, 1949 and June 22, 1949. There is no evidence in the record so far as we can see which justifies a deduction for these lunches by petitioner as its ordinary and necessary business expense. The second of these items is "Trip to Birmingham, M. T. Blackwell, 6-8-51 $9.00." We do not consider there is sufficient evidence in the record to justify us in allowing this item as a deductible business expense to petitioner. With the exceptions of the $3.55 and $9, just discussed, petitioner is sustained as to Issue 8. Issue 9 Pulled Interest. This issue involves funds which the internal revenue agent referred to in his report as pulled interest. The Commissioner in his determination of the deficiencies for each of the taxable years has added to the income reported by petitioner in its returns the following amounts: Fiscal year
Amount
1948
$ 5,830.00
1949
9,750.00
1950
13,723.00
1951
16,670.16
1952
14,026.73
The petitioner by appropriate assignments of error contests the correctness *145 of the foregoing adjustments. Findings of Fact The evidence at the hearing was without dispute that the amounts above stated represented cash taken from the corporation's funds and deposited in Blackwell's personal bank accounts and concealed on the books by false entries. These amounts were the totals of small amounts of $2.50, $5, $7.50, or $10 taken in cash from the corporation's cash drawers at the same time the loans were made. For example, a borrower would sign a note for $99, payable in three installments of $33 each. He would receive $75 in cash. The books instead of showing that $75 cash had been loaned to the borrower would show that amount as $80. As soon as the transaction was completed, $5 would be taken from the corporation's cash drawer, separated from the rest of its funds and put with other money taken out of the cash drawer and accumulated until it was deposited in Blackwell's bank account. At that point the result was that the corporation had made a loan of $75 to the borrower, who had signed a $99 note and those acting for the corporation had paid over to $5Blackwell, which was concealed by a false book entry. As the borrower paid back the loan, the first two *146 $33 installments, or $66, would be credited to principal, and the final $33 installment would be credited, $14 to principal, which with the $66 previously credited made a total of $80 credited to principal, and the $19 balance of the installment was credited to interest. The scheme of erroneously keeping the records of O. K. Loan Company by making false entries reducing interest and increasing loan principal was the idea of Marvin T. Blackwell, president of petitioner, who was in complete charge of its business affairs and this fraudulent scheme was continued during each of the taxable years involved in these proceedings. Marvin T. Blackwell and O. D. Cantwell instructed the employees in the method of pulling interest. Either Blackwell or Cantwell made regularly weekly inspection of each of the loan offices and they received daily progress reports designated daily balance sheet showing, among other things, the number and amount of loans made, and the daily cash position of each office. Cantwell assisted Blackwell in supervising operations of the four loan offices. Instructions given to employees in pulling interest on loans by Cantwell was at the direction of Blackwell. The records *147 of loans most frequently falsified were those of loans made for 90 days and certain loans that were renewed on payment of interest and sometimes referred to as loans "balanced out." The sums pulled from interest charged on loans as explained in the above paragraphs were withdrawn from the cash of the business and accumulated during the month until about the first of the following month when the total accumulated interest pulled was delivered to Blackwell or his agent, Cantwell, or deposited by the loan office manager to one of Blackwell's two personal bank accounts. In order that they might have a record of all the interest pulled, Blackwell and Cantwell instructed the employees of each office to enter the separate sums of pulled interest in small notebooks generally referred to as pull books. The pull books were kept in the back of the cash registers in the four offices. The small notebooks in which interest pulled on loans was recorded were not kept on corporate records and the sums recorded therein were not included or reported in any of the corporation's income tax returns for any of the taxable years involved. Cantwell not only instructed employees of O. K. Loan Company *148 how to pull interest on loans, he further made no objection to the scheme of false entries and assisted in delivering the pulled interest to Blackwell. Blackwell instructed the managers of the loan offices to stop pulling interest on loans on the date special agent Bishop N. Barron was called in to assist revenue agent Thomas F. Duncan in making the investigation of the corporation and the individual tax returns of the petitioners herein. The petitioner agrees that interest on loans in the total sum of $59,999.98 for the fiscal years April 30, 1948 through April 30, 1952, consisting of the several amounts we have already enumerated, was withdrawn from O. K. Loan Company and delivered to Blackwell, or at his direction to Cantwell for Blackwell by the managers of the general loan offices, or deposited by them to one of Blackwell's personal bank accounts. Opinion Petitioner in its brief concedes that the so-called pulled interest was income to petitioner corporation and should have been reported in its income tax returns for the respective taxable years. However, it contends that petitioner should have claimed as deductible losses on its returns the amounts of this so-called pulled *149 interest. The petitioner now claims such losses and contends that they should be allowed as deductions under section 23(f), I.R.C. of 1939, which provides a deduction from gross income "In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise." Petitioner relies principally on Commissioner v. Wilcox, 327 U.S. 404, and Dix [Dix, Inc., J.J. et al.] v. Commissioner, (C.A. 2) 223 Fed. (2d) 436. We have recently had the responsibility of considering these two cases in connection with an issue involving much the same principle as we have here in the instant case and we decided that Commissioner v. Wilcox, supra, and Dix v. Commissioner, supra, were not controlling. See Estate of Helene Simmons, 26 T.C. - (filed May 31, 1956). We do not think it is necessary here to discuss at length what we said in Estate of Helene Simmons, supra, concerning the same sort of issue as we have here. We would find difficulty in distinguishing the instant case from Estate of Helene Simmons in so far as the issue of pulled interest is concerned. It is true that the corporation from which the *150 funds had been taken was not before us in the Estate of Helene Simmons case and we had no occasion to pass upon the tax liability of the corporation in that case as we have here. We did hold, however, that the funds there taken from the corporation were in the nature of dividends to its principal stockholder and must be taxed as such and not treated as embezzlement losses to the corporation. That is what we are holding here. Blackwell was in full charge of the corporation's affairs. He was one of its directors. Cantwell was also a director and Blackwell's chief assistant in managing the loan offices. The so-called pulled interest was paid over to Blackwell with his full knowledge and consent, with Cantwell's full knowledge and consent, and with the knowledge of the branch office managers. It may be the branch office managers did not approve it but they knew about it and participated in it. We fail to see how, under these circumstances, petitioner can deduct the losses which it claims as embezzlement losses. As we view the evidence the corporation was a full participant in the pulled interest transactions. We sustain the Commissioner in his action in adding these amounts to the *151 income reported by petitioner for the respective taxable years. Petitioner's contention that these amounts were deductible losses is denied. See Kann v. Commissioner, (C.A. 3) 210 Fed. (2d) 247, affirming 18 T.C. 1032; United Mercantile Agencies, Inc., 23 T.C. 1105. Issue 10 Fraud Penalties. In each of the fiscal years 1948 through 1952, the Commissioner has determined fraud penalties. In Docket No. 59627, involving the fiscal years 1948, 1950, and 1952, the Commissioner stated in his deficiency notice, as follows: "II. Inasmuch as the information on file in this office shows that the deficiencies for the taxable years ended April 30, 1948, April 30, 1950, and April 30, 1952 are due to fraud with intent to evade the tax, the fifty percent penalty has been added to each such deficiency in accordance with the provisions of Section 293(b) of the Internal Revenue Code of 1939." In Docket No. 53880, involving deficiencies in income tax determined against petitioner for the fiscal years 1949 and 1951, the Commissioner made a similar statement to the above, involving 50 per cent fraud penalties imposed against petitioner for those years. The *152 petitioner, by appropriate assignments of error, contests the imposition of fraud penalties for each of the taxable years. Findings of Fact In addition to the Findings of Fact under Issue 9 of these proceedings which are incorporated herein by reference, the following findings are made: On April 1, 1955, Marvin T. Blackwell and O. D. Cantwell who were the president and secretary-treasurer, respectively, of the O. K. Loan Company of Troy, Inc., entered a plea of guilty in the United States District Court for the Northern District of Alabama to an indictment which charged that they did "wilfully and knowingly attempt to evade and defeat a large part of the taxes due and owing by the corporation to the United States of America." The indictment sets out the years involved as being the fiscal years 1949, 1950, 1951, and 1952. The judgment of the court was that each of the defendants, Blackwell and Cantwell, be "fined Two Thousand Five Hundred ($2,500.00) Dollars, to stand committed as of April 8, 1955, and is hereby placed on probation for the period of Three (3) Years, subject to the general terms and conditions of probation of record in this court, upon the special condition *153 that defendant pay the fine imposed herein and court costs on or before April 8, 1955, and that he pay all taxes and penalties due by him when determined by the proper authority; and that said defendant be imprisoned after April 8, 1955, until payment of said fine, * * *" Part of the deficiencies determined by the Commissioner against the petitioner corporation for each of its fiscal years 1948 through 1952 was due to fraud with intent to evade tax. Opinion It, of course, requires no citation of authorities to support the proposition that the burden of proof is on the Commissioner to establish by clear and convincing evidence that part of the deficiencies is due to fraud with intent to evade tax. We think that the Commissioner has met his burden of proof as to each of the taxable years we have before us. See M. Rea Gano, 19 B.T.A. 518. In the Gano case we said, among other things, as follows: "A failure to report for taxation income unquestionably received, such action being predicated on a patently lame and untenable excuse, would seem to permit of no difference of opinion. It evidences a fraudulent purpose." In our Findings of Fact on this fraud issue we have *154 made a finding that "Part of the deficiencies determined by the Commissioner against the petitioner corporation for each of its fiscal years 1948 through 1952 was due to fraud with intent to evade tax." We think that finding is amply supported by the evidence and is dispositive of the fraud issue. The imposition by the Commissioner of fraud penalties for each of the taxable years is sustained. Issues as to Marvin T. Blackwell, Docket Nos. 52701, 59625 Marvin T. Blackwell and Clarice Blackwell, Docket Nos. 52702, 59626 General Findings of Fact Marvin T. Blackwell and his wife, Clarice Blackwell, are residents of Troy, Alabama. The income tax returns for the taxable years here involved were filed with the collector of internal revenue for the district of Alabama. For the calendar years 1947, 1948, and 1949 Blackwell filed individual returns; for the calendar years 1950 and 1951 Blackwell and his wife filed joint returns. Marvin T. Blackwell did not keep a regular set of books for the calendar years 1947 through 1949, and Marvin and Clarice did not keep a regular set of books for the calendar years 1950 and 1951. In the absence of adequate books or records, it was necessary *155 for the Commissioner's internal revenue agents to use the bank deposit method as adjusted for non-income items and also other available information for the purpose of computing taxable income of Marvin for the calendar years 1947 through 1949, and for Marvin and Clarice for the calendar years 1950 and 1951. The Commissioner adopted the agents' findings. Issue A Taxability of $1,407.06 salary. Did Marvin T. Blackwell receive as salary $1,407.06 from O. K. Loan Company for his services as president of the corporation for the fiscal year ended April 30, 1948, and is petitioner taxable on that amount? The Commissioner, in his determination of the deficiency against Blackwell for the fiscal year 1948, determined that this $1,407.06 was received by Blackwell as part of the purchase price of the assets which O. K. Loan Company acquired from him April 25, 1947. Respondent computed a gain to Blackwell from the sale of these assets of $205.51 and treated it as a capital gain. Findings of Fact On January 9, 1948, the O. K. Loan Company paid a check of $1,407.06 to Blackwell. This check was to cover payment of salary to Blackwell covering his services as president of petitioner during *156 the fiscal year ended April 30, 1948. Opinion This issue involves the same transaction covered by Issue 3 in the corporation's case. In deciding that issue we decided that the corporation was entitled to deduct the $1,407.06 as a business expense and that the Commissioner erred in disallowing the deduction. Petitioner Blackwell concedes that this was salary to him and taxable to him. It should be included as part of his taxable income for the calendar year 1948, if he has not already included it in his return for that taxable year, or if the Commissioner has not included it in his determination of the deficiency. Issue B Taxability of $205.51. Did Blackwell realize income of $205.51 taxable to him during the calendar year 1947 from the sale of the assets of his small loan business to O. K. Loan Company? The Commissioner has taxed him with capital gain on the sale. Petitioner assigns error as to this determination of the Commissioner. Findings of Fact Blackwell sold the assets of his small loan business to O. K. Loan Company April 25, 1947. The Commissioner included as part of the sale price which Blackwell received for the assets, the check of $1,407.06. That was error *157 on the part of the Commissioner for, as we have just held under Issue A above, this $1,407.06 was received by Blackwell as salary from the corporation and is taxable to him as such. The same payment has been allowed as a deduction to the corporation under Issue 3. Opinion The Commissioner is reversed in his determination that Blackwell had a gain of $205.51 in the sale of these assets to O. K. Loan Company. Manifestly, there will be a loss to Blackwell on the transaction when the check for $1,407.06 is eliminated, as it should be, from the purchase price which Blackwell received in the transaction. Issue C $900 Transfer of funds. Did Blackwell realize taxable income in the sum of $900 which allegedly represented a transfer of funds from the Ozark office to the Opp office during the taxable year 1949, but which respondent has determined was appropriated by Blackwell to his own use? The Commissioner, in his determination of the deficiency in petitioner's income tax for the year 1949, determined that Blackwell received from the O. K. Loan Company a check dated April 11, 1949, for $900, which he used for his own personal use. The Commissioner added it to petitioner's income *158 for 1949. Petitioner, by appropriate assignment of error, contests this determination of the Commissioner. Findings of Fact On April 11, 1949, the O. K. Loan Company drew a check for $900, payable to cash and handed it to Blackwell for deposit to O. K. Loan Company of Troy, Inc., Opp branch. It was for use by the Opp branch. It was deposited on April 11, 1949, in the First National Bank of Opp, Alabama, to the credit of O. K. Loan Company of Troy, Inc., Opp, Alabama. It was not appropriated by Blackwell for his own personal use. Opinion It seems clear that the Commissioner erred in this $900 adjustment. A photostatic copy of the check is in evidence as is also the statement from the First National Bank of Opp, Opp, Alabama, which shows that this check was deposited to the credit of O. K. Loan Company of Troy, Inc., in this bank. There is nothing in the record to indicate to us that this $900 was used for anything else other than the corporation's business. On this issue the Commissioner is reversed. Issue D Taxability of $393.36. Did Blackwell realize taxable income during the calendar year 1948 as distribution of a corporate dividend, the sum of $393.36 representing *159 the residual value of an automobile sold by him to O. D. Cantwell? Findings of Fact The testimony in the record concerning this item is so indefinite and unsatisfactory that we are unable to make any Findings of Fact concerning it. Opinion It, of course, requires no citation of authorities to support the proposition that the determination of the Commissioner is presumed to be correct. Concerning this item of $393.36, there is no satisfactory explanation in the record regarding it. The Commissioner's determination is sustained. Issue E Taxability of $3,600. Did Blackwell realize taxable income during the calendar years 1949 and 1951, as distribution of corporate dividends amounting to $3,600 as a result of the purchase of a Pontiac automobile, a Ford truck, and a Studebaker truck by the corporation for his personal benefit. This issue has some relation to Issue 5 with reference to the allowable depreciation to the corporation on its automobiles. Petitioner Blackwell contends that the automobile and the two trucks were purchased by the corporation for its own use, that they did not belong to him and that their purchase price did not represent a dividend which was distributed *160 to him by the corporation. Findings of Fact The Commissioner in his determination has disallowed purchases of automobiles and trucks by the corporation in his computation of depreciation deduction to the corporation and has charged as dividends to Marvin T. Blackwell, as follows: 12- 1-49
1950 Ford Truck
$ 350.00
10-23-51
1948 Studebaker Truck
550.00
2-21-51
1951 Pontiac
2,700.00
Total
$3,600.00 These vehicles were purchased by the corporation for its own use in its business. They were the property of the corporation, and not of Blackwell. He did not receive a dividend of $3,600 by reason of the purchase of these vehicles by the corporation. They were not for his use and benefit. Opinion We think the evidence in the record is sufficient to overcome the presumptive correctness of the Commissioner's determination in adding these items to petitioner's taxable income. Some of our discussion in Issue 5 regarding depreciation deductions claimed by the corporation is applicable here and need not be repeated. This Issue E is decided in petitioner's favor. Respondent is reversed. Issue F Automobile Expenses. Did Blackwell receive income from O. *161 K. Loan Company in the form of automobile expenses amounting to the sum of $4,350.21 which was disallowed as deductions to the corporation and which the Commissioner has determined represented taxable income to Blackwell. This issue is related somewhat to Issue 4 in the corporation's case. The Commissioner, in his determination of the deficiencies in petitioner's income tax for the years 1949, 1950, and 1951, has determined that petitioner was in receipt of taxable income because of automobile expenses incurred in his behalf by the corporation. Petitioner by an appropriate assignment of error contests this determination of the Commissioner. Findings of Fact Petitioner concedes that of the Troy automobile expense of $251.12 disallowed as a deduction to the corporation for 1949, 25 per cent, or $62.73, should be allocated to him and added to his income, that of the Troy automobile expense for 1950 of $2,736.41 disallowed by the Commissioner as a deduction to the corporation, $683.85 should be allocated to petitioner and added to his income for that year, and that of the Troy automobile expense for 1951 of $2,126.97 disallowed by the Commissioner as a deduction to the corporation, *162 25 per cent thereof should be allocated to petitioner and added to his income for that year. Petitioner did use to some extent, for his personal use, the automobiles which were owned by the corporation. That use was not greater than 25 per cent of the time. The allocation of expenses which the petitioner concedes should be allocated to him and added to the income reported on his return is approved. Opinion This issue is largely one of fact. We think the determination of the Commissioner as to these automobile expenses which should be added to petitioner's income is excessive. We think the amounts which petitioner concedes should be allocated to him and added to the income reported by petitioner on his returns are reasonable and they are approved. To the extent of these amounts which the petitioner has conceded, respondent's determination is approved. The remainder of the adjustments made by the Commissioner to Blackwell's income in respect to these automobile expenses is reversed. Issue G Insurance on Pontiac Automobile. The Commissioner has added to the income reported by petitioner for the calendar year 1951, the amount of an insurance premium $134of, which was paid *163 by the corporation on a Pontiac automobile owned by the corporation. The petitioner by an appropriate assignment of error contests the correctness of this adjustment. Findings of Fact The corporation owned a Pontiac automobile in 1951 and insured it and paid an insurance premium of $134. This automobile was used to some extent by petitioner for his personal use. This use did not exceed 25 per cent of the time the automobile was insured. Petitioner concedes that inasmuch as he used the Pontiac automobile not to exceed 25 per cent of the time for his personal use that 25 per cent of the insurance premium paid by him or $33.50, should be added to the income reported on his return for 1951. Opinion The issue we have here is one of fact. We are convinced from the evidence that petitioner did not use the automobile for his personal use to a greater extent than 25 per cent of the time. We think his concession that 25 per cent of the insurance premium of $134 should be allocated to him and added to his income for 1951 is reasonable. The evidence at the hearing was that Clarice did not drive an automobile at all. We think the Commissioner's determination is in error and it is reversed, *164 except to the extent of the $33.50 which the petitioner concedes. Issue H Excess Luverne Rent. The Commissioner disallowed to the corporation $100 for the fiscal year 1950 and $240 for the fiscal year 1951 as rent paid for its Luverne branch loan office. This issue as to the corporation is treated as Issue 7. The Commissioner added to petitioner's income this $340 and the petitioner assigns this action of the Commissioner as error. Findings of Fact The Findings of Fact which we made under Issue 7 of the corporation's case is incorporated herein by reference. Opinion This issue is one of fact. Petitioner concedes that the $340 involved in this issue was paid over to him, not as rent, but for his own personal use. He claims, however, that it was deposited to the extent of $240 along with the pulled interest which will be discussed under another issue later and was included in those amounts. We have no proof of this fact. If there was a duplication in the manner outlined in petitioner's brief, he should have proved it at the hearing. He did not do so. Mere statements in the brief are not evidence of the facts. Inasmuch as petitioner concedes that the $340 was paid over *165 to him for his personal use, the Commissioner's adjustment regarding this Luverne rent is sustained. Issue I Miscellaneous Disbursements by the Corporation Disallowed by the Commissioner as Business Expenses to the Corporation and Included as Income to Petitioners. Total amount, $1,090.33. In the determination of the deficiencies for petitioner's income taxes for the years 1948, 1949, 1950, and 1951, the Commissioner has added the following amounts to the income reported by petitioner on his returns: 1948
$157.45
1949
526.83
1950
365.35
1951
40.70 The total of the foregoing amounts is $1,090.33. Petitioner, by appropriate assignments of error contests the correctness of the action of the Commissioner in adding these amounts to his taxable income for the respective taxable years 1948, 1949, 1950, and 1951. Findings of Fact The amounts of the expenditures just described above are the same as are involved in Issue 8 of the corporation's case. The Findings of Fact already made herein under that Issue 8 are incorporated herein by this reference and are made the Findings of Fact under this Issue I. Opinion In our Opinion deciding Issue 8 of the corporation's *166 case, we held that all of the $1,090.33 expenditures there involved had been made for corporate purposes and were deductible by the corporation as business expenses, except $3.55 to cover lunches which the corporation paid for petitioner's benefit and $9 paid for a trip which Blackwell made to Birmingham and which was not shown to have been made for corporate business. We, in effect, make the same holding here and reverse the Commissioner's determination as to the entire amounts involved, except the $3.55 for lunches and $9 covering the trip to Birmingham. The Commissioner's action in adding these two latter items to petitioner's net income is sustained. Issue J Pulled Interest. This issue involves funds which the internal revenue agent referred to in his report as pulled interest. The Commissioner in his determination of the deficiencies in petitioner's income tax for each of the taxable years has added to the income reported by petitioner on his returns the following amounts: 1947
$ 3,635.00
1948
7,865.00
1949
11,469.00
1950
18,579.00
1951
13,706.39 The petitioner by appropriate assignments of error contests the correctness of the action of the Commissioner *167 in adding the foregoing amounts to his taxable income. Findings of Fact Our Findings of Fact under Issue 9 of the corporation's case are incorporated by reference under this Issue J and are made a part hereof. It is unnecessary to repeat them. Opinion Our decision of Issue 9 in the corporation's case largely controls our decision on Issue J in petitioner's case and we deem it unnecessary to repeat what we said in our discussion of Issue 9 in the corporation's case. In the instant case petitioner concedes that he did receive the amounts of so-called pulled interest which the Commissioner has included in his taxable income for the calendar years 1947 through 1951, and that he did not report them on his returns. The only reason that he gives for not reporting these amounts as taxable income is that they were funds which he had embezzled from the corporation and that under the Supreme Court's decision in Commissioner v. Wilcox, supra, and the Second Circuit's decision in Dix v. Commissioner, supra, embezzled funds do not represent taxable income. For reasons which we set forth in our discussion under Issue 9 of the corporation's case we do not think *168 the Wilcox and Dix cases are controlling here. Cf. Estate of Helene Simmons, supra. We decide Issue J in favor of the Commissioner. Issue K Dependants. Is Marvin T. Blackwell entitled to dependency credits claimed for Mary and Della Blackwell for the calendar years 1947, 1948, and 1949, and are Marvin T. and Clarice Blackwell entitled to dependency credits for Mary and Della Blackwell for the calendar year 1950 and are they entitled to dependency credit for Mary Blackwell for the calendar year 1951? In his determination of the deficiency in petitioner's income tax for the year 1947, the Commissioner disallowed two exemption credits which petitioner had claimed on his return. The Commissioner explained this adjustment in his deficiency notice as follows: "(a) With reference to the two exemption credits not allowed, it is held that you have failed to establish the fact that you are entitled to the exemption credits for Mrs. Mary O. Blackwell, your stepmother, and Miss Della A. Blackwell, your aunt, for the taxable year ended December 31, 1947, Sections 25(b)(1)(D) and 25(b)(3) of the Internal Revenue Code of 1939." Similar adjustments were made by the Commissioner for *169 the other taxable years here involved, except 1951 where only one exemption is involved, and were explained in a similar manner by the Commissioner in his deficiency notices. The petitioner contests the correctness of these adjustments. Findings of Fact Mary Blackwell was petitioner's stepmother and during the taxable years she was more than 70 years of age. Della Blackwell was an aunt of petitioner and was more than 70 years of age during the taxable years here involved. Neither had income in excess of $500 during the taxable years here involved. Petitioner Marvin T. Blackwell furnished more than one-half the support of Mary Blackwell and Della Blackwell in each of the taxable years here involved, except 1951. Della Blackwell was not living in 1951, she died in 1950. Petitioner furnished more than one-half the support of Mary Blackwell in 1951. Opinion The applicable statute here involved is section 25 of the 1939 Code which reads, as follows: "SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME. * * *
"(b) Credits for Both Normal Tax and Surtax. - "(1) Credits. - There shall be allowed for the purposes of both the normal tax and the surtax, the following credits *170 against net income: * * *
"(D) An exemption of $600 for each dependent whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $500, * * * "(2) Determination of status. - For the purposes of this subsection - * * *
"(3) Definition of dependent. - As used in this chapter the term 'dependent' means any of the following persons over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer: * * *
"(E) a stepfather or stepmother of the taxpayer, * * *
"(G) a brother or sister of the father or mother of the taxpayer," The exemption under the statute applicable to the year 1947 was only $500. Respondent concedes that the two dependents for whom petitioner claimed credits were within the relationship status prescribed by the statute. Respondent contends, however, that petitioner has not proved that each of the dependents had income less than $500 per annum in each of the taxable years nor has he proved that he contributed more than one-half the support of each of the dependents during the taxable years. It is true that the evidence on this issue *171 is not as satisfactory as it should be. Della Blackwell was dead at the time of the hearing. Mary Blackwell was aged and infirm and was not present at the hearing. Petitioner Marvin T. Blackwell did not testify. He was present at the hearing and presented a certificate from his physician which reads: "This is to certify that Mr. M. T. Blackwell has been under my care for the past four years and since that time, I have treated him for coronary thrombosis for the past two years. He has been restricted on all physical activities as he still has symptoms with exercise and emotional stress. "Mr. Blackwell has been diagnosed as an uncontrolled diabetic in the last month for which hospitalization has been advised. "It is my opinion that Mr. Blackwell is not physically able to be exposed to a traumatic experience as taking a witness stand or being severely questioned." The only witness of petitioner's to testify on this dependency issue was Orville D. Cantwell, petitioner's close associate during all of the taxable years here involved. The upshot of Cantwell's testimony was that he knew Della and Mary Blackwell well during each of the taxable years, that so far as he knew neither of *172 them had any income to amount to anything, certainly not in excess of $500 in any year, and that in his opinion Marvin T. Blackwell contributed more than one-half the support to each of these dependents during the taxable years. On the strength of his testimony we have made Findings of Fact that neither of them had as much as $500 income in any of the taxable years and that in each of the taxable years Marvin T. Blackwell furnished more than one-half of their support. In view of these findings we sustain petitioner on this issue as to dependency credits and reverse the Commissioner in his disallowance of them. Issue L Fraud. In each of the taxable years 1947 through 1951, the Commissioner has determined fraud penalties. In Docket No. 59625, involving deficiencies in income tax determined against petitioner by the Commissioner for the calendar years 1947 and 1949, the Commissioner in explanation of his action in adding fraud penalties made a statement in his deficiency notice, as follows: "II. Inasmuch as you filed false and fraudulent income tax returns for the taxable years ended December 31, 1947, and December 31, 1949, with intent to evade your income tax liability, the *173 fifty percent fraud penalty has been added to the deficiencies in accordance with the provisions of Section 293(b) of the Internal Revenue Code of 1939." Similar statements as the above were made by the Commissioner in explanation of his imposing the fraud penalties as to the other taxable years here involved. The petitioner by appropriate assignments of error contests the correctness of the action of the Commissioner in imposing fraud penalties. Findings of Fact Our Findings of Fact under Issue 9 of the corporation's case are incorporated herein by reference and made a part hereof. In addition to the Findings of Fact under Issue 9, the following findings are made: On April 1, 1955, Marvin T. Blackwell entered a plea of guilty in the United States District Court for the Northern District of Alabama to an indictment charging him with the criminal offense of evading and defeating income tax due the United States by filing false and fraudulent income tax returns for the calendar years 1948 through 1951. Part of the deficiencies in income tax determined against petitioner for each of the taxable years 1947 through 1951 is due to fraud with intent to evade the tax. Opinion *174 It, of course, requires no citation of authorities to support the proposition that the burden of proof is on the Commissioner to establish by clear and convincing evidence that part of the deficiencies was due to fraud with intent to evade tax. We think that the Commissioner has met his burden of proof as to each of the taxable years we have before us. See M. Rea Gano, supra. In the Gano case we said, among other things, as follows: "A failure to report for taxation income unquestionably received, such action being predicated on a patently lame and untenable excuse, would seem to permit of no difference of opinion. It evidences a fraudulent purpose." In our Findings of Fact under this fraud Issue L, we have made a finding that "part of the deficiencies in income tax determined against petitioner for each of the taxable years 1947 through 1951 is due to fraud with intent to evade the tax." We think that finding is amply supported by the evidence in these proceedings and is dispositive of the fraud issue. Clarice Blackwell, although not a participant in the fraud, is liable for the penalties imposed for 1950 and 1951 because she signed a joint return for those years. *175 The imposition by the Commissioner of fraud penalties for each of the taxable years is sustained. Issue M Failure to File Declarations of Estimated Tax. Did the respondent correctly assert a penalty under section 294(d)(1)(A) of the 1939 Code for the erroneous failure of Marvin T. Blackwell to file a declaration of estimated tax for each of the calendar years 1947, 1948, and 1949, and did the respondent correctly determine that Marvin T. Blackwell and Clarice Blackwell erroneously failed to file a declaration of estimated tax for the calendar years 1950 and 1951, and are liable for the penalties? Petitioner by appropriate assignments of error contests the correctness of the imposition of these penalties. Findings of Fact Marvin T. Blackwell did not file a declaration of estimated tax for any of the calendar years 1947 through 1949, and Marvin T. Blackwell and Clarice Blackwell did not file a declaration of estimated tax for either of the calendar years 1950 or 1951. Opinion The petitioner in his brief concedes that there was no declaration of estimated tax filed by him for any of the taxable years and that his total income for each of the taxable years exceeded the *176 minimum which would have relieved him from the necessity of filing an estimated tax return. He also concedes that he is subject to the five per cent penalty provided by the statute for failure to file his estimated tax return. He contends, however, that the five per cent penalty should be based on his actual income for each of the taxable years as will be computed under Rule 50. In this contention the petitioner is, of course, correct and the penalty for failure to file estimated tax return will be computed under Rule 50. Issue N Penalty under Section 294(d)(2). Did the respondent correctly determine a penalty under section 294(d)(2) of the 1939 Code against Marvin T. Blackwell for the substantial understatement of estimated tax for each of the calendar years 1947, 1948, and 1949, and did the respondent correctly determine a penalty against Marvin T. and Clarice Blackwell under that section for the substantial understatement of estimated tax for each of the calendar years 1950 and 1951? The petitioner by appropriate assignments of error contests the correctness of the penalties which the Commissioner has determined against petitioner for each of the taxable years under section *177 294(d)(2). Findings of Fact Marvin T. Blackwell substantially understated taxable income realized during the taxable years 1947 through 1949 in failing to file a declaration of estimated tax for the said calendar years, and Marvin T. Blackwell and Clarice Blackwell substantially understated taxable income realized during the calendar years 1950 and 1951 in failing to file a declaration of estimated tax for the said calendar years. Opinion The petitioner concedes in his brief that the Tax Court has decided against his contentions as to the imposition of penalties under section 294(d)(2). In his brief, he states: "Although this court held for example in the Fuller case, 20 TC 308, that the penalty for underestimation applies while there was no estimation at all, there is authority holding to the contrary as, for example, U.S. v. Redley, 120 Fed. Supp. 530." We followed G. E. Fuller, 20 T.C. 308, in Harry Hartley, 23 T.C. 353. Issue N is decided against petitioner. The penalty for each taxable year will, of course, be recomputed under Rule 50 in accordance with petitioner's correct income as recomputed under Rule 50. *178 So far as we have been able to ascertain from the pleadings and the evidence, we have now decided all the numerous issues raised by the pleadings. Decisions will be entered under Rule 50. Footnotes
1. The following proceedings are consolidated herewith: Marvin T. Blackwell and Clarice Blackwell, Docket No. 52702; O. K. Loan Company of Troy, Inc., Docket No. 53880; Marvin T. Blackwell, Docket No. 59625; Marvin T. Blackwell and Clarice Blackwell, Docket No. 59626; O. K. Loan Company of Troy, Inc., Docket No. 59627.↩